IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

YELLOWDOG PARTNERS, LP and )
CARPENTERS PENSION FUND )
OF ILLINOIS, individually and on behalf )
of all others similarly situated, )
 )
                 Plaintiffs, )
 )
v. )   Case No. 18-2662-JWL
 )
CURO GROUP HOLDINGS CORP.; )
DONALD F. GAYHARDT; )
WILLIAM BAKER; and )
ROGER W. DEAN, )
 )
                 Defendants. )
 )
_____)

## **MEMORANDUM AND ORDER**

Plaintiff Yellowdog Partners, LP ("Yellowdog") initiated this action under the federal Securities Exchange Act of 1934 against defendant CURO Group Holdings Corp. and three of its officers. Yellowdog asserts claims on its behalf and on behalf of a class consisting of all persons who purchased CURO securities from July 31, 2018, up to and including October 24, 2018. This matter presently comes before the Court on competing motions for appointment as lead plaintiff filed by Yellowdog (Doc. # 21) and by another putative class member, Carpenters Pension Fund of Illinois ("the Fund") (Doc. # 19).[1] The Court conducted a hearing on the motions on March 8, 2019. Based on the arguments

---

[1] A third motion for appointment as lead counsel was subsequently withdrawn.

made in the movants' briefs and at the hearing, and for the reasons set forth below, the Court appoints the Fund as lead plaintiff in this action, and it approves the Fund's selection of counsel to represent the putative class. Accordingly, the Court **grants** the Fund's motion and **denies** Yellowdog's motion.

I.     **Applicable Law**

The Private Securities Litigation Reform Act (PSLRA) provides that in a private securities class action, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 78u-4(a)(3)(B). The statute further creates the presumption that this "most adequate plaintiff" is the person or group that "has the largest financial interest in the relief sought by the class," so long as that person or group has filed a timely motion and satisfies the requirements of Fed. R. Civ. P. 23. *See id.* The presumption may be rebutted only upon proof that the one with the largest financial interest will not fairly and adequately protect the interests of the class or is subject to unique defenses that renders that person incapable of adequately representing the class. *See id.*

In this case, both Yellowdog and the Fund filed timely motions, it appears that both satisfy the adequacy and typicality requirements of Rule 23, and neither has suggested that a presumption in favor of the other could be rebutted. Both movants are represented by experienced and capable counsel. Thus, the appointment of lead plaintiff turns entirely on which movant has the larger financial interest in the relief sought by the class.

The PSLRA does not provide a standard for determining the size of a member's financial interest in the litigation. Nor has the Supreme Court or the Tenth Circuit addressed the issue. Both movants agree that courts generally apply the factors first enunciated in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), and both would have the Court apply the *Lax* factors here. Those factors are as follows: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *See id.* at *5. The Court agrees that consideration of those factors is appropriate in this case.

"Of these factors, courts have consistently held that the fourth factor, the magnitude of the loss suffered, is the most significant." *See Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012). The trend is to treat the four factors as listed in reverse order of importance. *See Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473, 475-76 (S.D.N.Y. 2011). The Court agrees with that ranking of the importance of the factors (from fourth to first). Yellowdog argues that the first factor should be given significant weight because it is the most objective of the four and thus the least susceptible to manipulation. Yellowdog cites *Pio v. General Motors Co.*, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014), to support that argument. In *Pio*, the court declined an invitation to rely solely on the fourth factor, and it noted that the first three factors provide the most objective measurement because the fourth factor depends on the method used to calculate it. *See id.* at *4. The court further noted that some courts had found the second factor to be the most determinative. *See id.* In this case, the Court will consider all four factors, but

3

it will give the most weight to the fourth factor, based on its conclusion that the plaintiffs' losses, and thus their claims for damages, are the most important factor in determining the largest financial interest in this litigation.

**II.     Analysis of the Largest Financial Interest**

The movants appear to agree on the amount and value of their purchases and sales of the securities during the class period. Yellowdog purchased 41,948 shares during the proposed class period; the Fund purchased 18,400 shares. Thus, the first factor, the number of shares purchased during the class period, weighs in favor of Yellowdog.

The second and third *Lax* factors are the net shares purchased and the net funds expended during the class period. The Fund had no sales during the class period, and its net is therefore 18,400 shares, purchased for $565,238. Yellowdog sold 31,447 shares during the period, which would seem to mean that it purchased a net total of 10,501 shares during the class period (with net funds expended of $160,409). Such calculations would tilt these factors in favor of the Fund. Yellowdog, however, argues that its net figures are the full 41,948 shares, purchased for $703,166. Yellowdog would have the Court ignore the sales during the class period on the basis of its first-in-first-out (FIFO) accounting method. Under that method, because Yellowdog held over 35,000 shares at the start of the class period, those shares were sold first (the first shares in are also the first shares out), and thus because the shares purchased during the class period were not sold during that period, those purchased shares also represents the net figure, with no reduction for sales.

4

This dispute is effectively resolved in the Court's consideration of the fourth factor, turning on whether the Court uses the FIFO method or the alternate last-in-first-out (LIFO) method urged by the Fund. The Court notes, however, Yellowdog's emphasis on the objective nature of these two factors. Yellowdog cites the *Pio* case for that argument, but the *Pio* court considered these factors objective because (unlike the fourth factor) they did not turn on the particular accounting method used. Thus, viewed objectively (as Yellowdog requests), the second and third *Lax* factors would look at the net shares purchased in a before-and-after sense, measuring the difference in position at the beginning and end of the class period. Under that analysis, Yellowdog had 10,501 more shares at the end than at the beginning of the period, so that number is more appropriately used as the net – with the result that the second and third factors also weigh in the Fund's favor.

In this case, the Court concludes that the plaintiff with the largest financial interest is most appropriately determined by reference to each movant's approximate losses resulting from the alleged securities fraud. That factor depends entirely on whether the Court uses the FIFO accounting method or the LIFO method. The movants do not dispute these calculations for purposes of the lead plaintiff determination: Yellowdog suffered a loss of $375,514 under the FIFO method, but only lost $209,549 under the LIFO method; the Fund lost $301,811 under either method. Thus, if FIFO is used, Yellowdog suffered the greatest loss and has the largest financial interest in the litigation; if LIFO is used, the Fund has the largest interest and is the most adequate plaintiff.

As noted above, the statute does not require the use of a particular method, and the Supreme Court and Tenth Circuit have not weighed in. The Ninth Circuit has stated that a

court may select accounting methods that are rational and consistently applied. *See In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). These movants concede that both LIFO and FIFO are valid and accepted accounting methods. The Court concludes, however, that for purposes of determining the largest financial interest at this stage, use of the LIFO method is more appropriate.

First, as one court noted only months ago, the overwhelming majority position and the trend among courts is in favor of LIFO over FIFO for purposes of this lead plaintiff analysis. *See, e.g.*, *Mariconda v. Farmland Partners Inc.*, 2018 WL 6307868, at *3 (D. Colo. Dec. 3, 2018) (in applying the *Lax* test, courts "greatly prefer[]" the LIFO method over FIFO) (citing cases); *Kinross*, 2012 WL 2025850, at *3 ("the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses") (citing cases). Moreover, as the court in *Kinross* pointed out, some courts have used FIFO only reluctantly because of a lack of data with which to perform a LIFO analysis. *See Kinross*, 2012 WL 2025850, at *3 (citing cases).

Yellowdog does not dispute that the majority position is to use LIFO for this inquiry; it does cite a few cases in which courts used FIFO, but it has cited no such case decided in the last ten years. Moreover, these older cases cited by Yellowdog as involving the use of FIFO at the lead plaintiff stage are not persuasive. In *Thompson v. Shaw Group, Inc.*, 2004 WL 2988503 (E.D. La. Dec. 14, 2004), the court used FIFO, but it noted that it did not need to choose definitively between the methods to decide on the lead plaintiff in that case, and the court further stated that in the remainder of the litigation, "FIFO may be insufficiently accurate and jettisoned in favor of LIFO." *See id.* at *4-5. In *In re Cardinal*

6

*Health, Inc. Securities Litigation*, 226 F.R.D. 298 (S.D. Ohio 2005) (Marbley, J.), the court was not given figures under LIFO, it stated that the lead plaintiff would be the same under either method, and it made a point of noting that its use of FIFO at the lead plaintiff stage "in no way demonstrates a modicum of approval of FIFO." *See id.* at 304. In *Ohio Public Employees Retirement System v. Fannie Mae*, 357 F. Supp. 2d 1027 (S.D. Ohio 2005) (Marbley, J.), only one group of plaintiffs was a candidate to be named lead plaintiff, and the court used FIFO because those plaintiffs used that method, but the court repeated its disclaimer from *Cardinal Health* that such use "in no way demonstrates a modicum of approval of the methodology." *See id.* at 1033 & n.11. In *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528 (N.D. Cal. 2009), the court did not choose between FIFO and an alternate method that netted shares sold during the class period because the outcome was the same under either method. *See id.* at 531-32. In *Baughman v. Pall Corp.*, 250 F.R.D. 121 (E.D.N.Y. 2008), the court used the FIFO method, but it did not choose that method over another method, and it was undisputed which plaintiff had the largest financial interest. *See id.* at 125 & n.2. Finally, in *In re Veeco Instruments, Inc.*, 233 F.R.D. 330 (S.D.N.Y. 2005) (McMahon, J.), the court used FIFO at the lead plaintiff stage, *see id.* at 333; ten years later, however, the same judge chose LIFO over FIFO for purposes of determining the lead plaintiff, noting the advantage of using LIFO over FIFO and the fact that most

7

courts use LIFO at this stage. *See Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 531-32 (S.D.N.Y. 2015).[2]

Second, the reasons for preferring LIFO over FIFO are sound. The Southern District of New York explained these reasons well in *Kinross*. The primary reason for using the LIFO method is that LIFO is thought to be more accurate in determining a class member's actual loss resulting from the alleged nondisclosures, as follows:

> FIFO has the potential to exaggerate losses, by failing to take into account gains that an investor might have made on the stock that were attributable to its artificial inflation as a result of the alleged fraud; LIFO, on the other hand, takes into account such gains.

*See id.* at *3. The *Kinross* court used another court's hypothetical to illustrate the point, and because this Court agrees that the hypothetical is instructive, it reproduces it here in its entirety:

> Consider an Investor A with accumulated holdings of 10,000 shares of XYZ Corporation that were acquired when everything was on the up and up in terms of corporate disclosures, and that represent the investor's long-term commitment to the company's prospects. Assume further that unknown to Investor A but during what later turns out to be a plaintiffs' class period – a time when the nondisclosure of adverse information caused the stock price to be too high in terms of real value – Investor A both buys and sells an aggregate of 5,000 shares of XYZ stock in various transactions before the stock price later falls out of bed, and that such class-period transactions leave Investor A neither out of pocket nor in pocket when the expenditures for and the proceeds of those transactions are aggregated.

---

[2] Yellowdog is mistaken in asserting that the courts in two other cases used FIFO at the lead plaintiff stage. *See In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, 2006 WL 903236, at *17-18 (S.D.N.Y. Apr. 6, 2006) (overruling objection to use of FIFO in allocation of settlement; noting that both FIFO and LIFO have been used in that district at the lead plaintiff stage); *In re Schering-Plough Corp. Sec. Litig.*, 2003 WL 25547564, at *9 (D.N.J. Oct. 10, 2003) (using FIFO at class certification stage).

> Is there any real question that Investor A, who has thus retained the same long-term stake in XYZ that preceded the class period, has sustained neither gain nor loss *from the transactions during the class period?* To sharpen the issue even further, is there any question that Investor A is in an economic position identical to that of Investor B, someone who also held 10,000 shares of XYZ before the beginning of what later provide to be the class period, and who didn't trade at all during the class period? Or is there any question that both Investor A and Investor B are in the identical economic position as Investor C, a person who held no XYZ shares before the class period and whose purchases and sales during the class period, each aggregating 5,000 shares, also resulted in a wash in terms of the dollars involved?

*See In re Comdisco*, 2004 WL 905938, at *2-3 (N.D. Ill, Apr. 26, 2004), *quoted in Kinross*, 2012 WL 2025850, at *4. Moreover, LIFO excludes "in-and-out" transactions – purchases and sales during the class period – in which gains or losses are more likely attributable to factors other than the fraud. *See Kinross*, 2012 WL 2025850, at *4.

Yellowdog has offered no rebuttal to this hypothetical, and as noted above, Yellowdog has not cited any authority that explains why FIFO yields a more accurate accounting of losses than LIFO in this context. Yellowdog cites three older cases in support of its argument that LIFO's netting of sales should be rejected in determining a securities fraud plaintiff's damages, but those cases are not persuasive for purposes of this analysis. In *Randall v. Loftsgaarden*, 478 U.S. 647 (1986), the Supreme Court, while noting Congress's purpose of deterring fraud in enacting the Securities Exchange Act, held that a plaintiff's damages should not have been offset by tax benefits that purportedly resulted from the underlying misconduct. *See id.* at 664. Such benefits, which the Supreme Court noted may be speculative or difficult to predict, *see id.* at 664-65, are not as closely related to the plaintiff's losses as the sales of the same stock during the class period (as in the

9

present case). The Supreme Court certainly did not endorse FIFO over LIFO, and no court has interpreted *Randall* to preclude the use of the latter method. In *In re Clinton Oil Co. Securities Litigation*, 1977 WL 1010 (D. Kan. Mar. 22, 1977), decided over 40 years ago, the court concluded that the plaintiff's gains on shares bought and completely sold within the class period should not be netted against her loss from a later purchase within the period. *See* at * 1-3. That case is not particularly relevant to the situation here, however, because that plaintiff did not own shares before the class period and thus did not benefit from the artificially high price resulting from the fraud. Similarly, in *Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643 (11th Cir. 1990), the court refused to net sales of the plaintiff's entire holding of shares prior to the relevant purchases during the class period, *see id.* at 646; thus, the case does not speak to the present situation, in which Yellowdog continuously held shares before and throughout the class period.

Yellowdog argues that maximizing the amount of damages using FIFO is more in keeping with the securities laws' goal of deterring improper behavior. As noted above, however, recent courts have not relied on that or any other basis to choose FIFO over LIFO. Moreover, even though FIFO damages may or may not ultimately be recoverable in this case, it is more important at this stage to choose the method that produces the most accurate determination of actual losses suffered by class members, and courts are in general agreement that LIFO is the more accurate method. As the Court noted at the hearing on these motions, the Court's concern is not that the plaintiffs' damages be maximized, but rather that their damages (if any) be accurately determined, in better service of the interests of justice. Nor is the Court charged with sending any messages to other corporations; at

this stage, its sole charge is to determine which plaintiff has the greatest financial interest in the litigation.

Yellowdog notes that FIFO is often used in the taxation context, but it does not follow that FIFO is superior for use in this context. As the *Kinross* court and other courts have noted in rejecting such an argument, "the IRS utilizes FIFO not because it is more precise than LIFO, but because it maximizes taxable income and forces taxpayers to recognize gains that they would prefer to defer or avoid." *See id.*

Yellowdog argues that FIFO is often used in securities settlements and the allocation of settlement funds, that plaintiffs may ultimately wish to pursue FIFO damages in this case (to maximize the class members' recovery), and that FIFO should therefore be used at this stage for the sake of consistency. In making the lead plaintiff determination, however, this Court does not choose between FIFO and LIFO for all purposes, and the parties will be able to litigate the proper computation of damages at the appropriate stage. At this stage, the Court believes that LIFO yields the most accurate results, and the great majority of courts use that method for that reason.[3]

Yellowdog stresses that it uses FIFO in its actual accounting of its business transactions, and that the Court should therefore use FIFO to calculate its losses (as

---

[3] At the hearing, Yellowdog wondered how, in the event of a settlement of this case, the Court could ever deem a settlement or allocation based on FIFO to be fair and reasonable if its endorses LIFO as the superior method at this stage. Of course, multiple methods could be considered fair for purposes of a settlement, and the Court is not bound to insist on the best possible settlement. At this stage, on the other hand, the Court must prefer one method over the other, and like most other courts, the Court chooses LIFO as the superior method.

Yellowdog has done). That fact, however, does not overcome the rationale for using LIFO described above. Yellowdog argues that the Fund has cited no example of a court using LIFO when one of the movants used FIFO in its actual business. Of course, a court might have failed to note one movant's outside use of FIFO because it did not deem that use relevant to the inquiry. Moreover, the converse of Yellowdog's argument is equally persuasive, as Yellowdog cannot point to any case in which a court chose FIFO over LIFO solely because of such use by one movant. At any rate, the majority of courts use LIFO for purposes of the lead plaintiff determination, and the rationale for that decision remains sound, regardless of which accounting method a movant may have used for other purposes.

Finally, Yellowdog cites a case in which the Fund, as a litigant, argued in favor of FIFO. *See Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2004 WL 5326262 (N.D. Cal. May 27, 2004). In that opinion, however, the court was addressing a motion for class certification, and the court cited the fact that the plaintiffs were seeking FIFO damages in rejecting the argument that certain proposed class representatives were not typical under Rule 23 because they were "net sellers." *See id.* at *3. Thus, the context was different in that case. The fact that the Fund was among a group of plaintiffs that sought FIFO damages in litigation occurring 15 years ago (when the majority position in favor of LIFO was less obvious) does not make the Fund's advocacy for the use of LIFO at the lead plaintiff stage in this case disingenuous or less compelling. Similarly, the Court does not find relevant that fact that the Fund's counsel, in another case, recently argued for the use of FIFO at the lead plaintiff stage. In that case, counsel argued that LIFO overstated the competing movant's losses for very specific reasons that would undermine the rationale

12

that normally favors LIFO over FIFO. Counsel argues that those unique circumstances are not present in this case, and Yellowdog has not refuted that argument. Thus, the prior argument by the Fund's counsel does not undermine the Fund's argument in favor of LIFO in this case.

For these reasons, the Court, in accord with the majority of courts, will apply the LIFO method of accounting. Under that method, the Fund has the largest known financial interest in this litigation. A presumption thus arises that the Fund is the most adequate plaintiff, and there is no basis to rebut that presumption in this case. Therefore, the Court appoints the Fund as the lead plaintiff in this action.

### III. Approval of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court has determined that the Fund is the most adequate plaintiff under the PSLRA, and the Fund has selected the firm of Robbins Geller Rudman & Dowd LLP to represent the class (presumably with the assistance of Cavanagh & O'Hara, which is also listed on the Fund's briefs, and Stueve Siegel Hanson LLP, which filed the briefs as local counsel). Neither Yellowdog nor any other putative class member has made any argument that the Fund's chosen counsel is not sufficiently experienced or proficient, or otherwise suggested that the Fund should not have its counsel approved if appointed lead plaintiff. The Fund's counsel does indeed have extensive experience in litigating cases of

this kind. Accordingly, the Court approves the Fund's counsel as lead counsel to represent the putative class of purchasers.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion by Carpenters Pension Fund of Illinois for appointment as lead plaintiff (Doc. # 19) is hereby **granted**. The Fund is hereby appointed to serve as lead plaintiff in this action, and the Court approves the Fund's selection of counsel to represent the putative class.

IT IS FURTHER ORDERED BY THE COURT THAT the motion by Yellowdog Partners, LP for appointment as lead counsel (Doc. # 21) is hereby **denied**.

IT IS SO ORDERED.

Dated this 13th day of March, 2019, in Kansas City, Kansas.

                                                  s/ John W. Lungstrum
                                                  John W. Lungstrum
                                                  United States District Judge