IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| YELLOWDOG PARTNERS, LP and<br>CARPENTERS PENSION FUND<br>OF ILLINOIS, individually and on behalf<br>of all others similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>CURO GROUP HOLDINGS CORP., et al.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 18-2662-JWL

## MEMORANDUM AND ORDER

Plaintiffs[1] initiated this putative class action under the federal Securities Exchange Act of 1934 ("the Exchange Act") against defendant CURO Group Holdings Corp. ("Curo") and various executives and owners of Curo. This matter presently comes before the Court on defendants' motion to dismiss the consolidated complaint (Doc. # 47). For the reasons set forth below, the Court **denies** the motion to dismiss.

---

[1] Plaintiff Yellowdog Partners, LP filed this action, but the Court subsequently appointed Carpenters Pension Fund of Illinois as lead plaintiff (and approved that party's counsel to represent the putative class) pursuant to the Private Securities Litigation Reform Act. Lead plaintiff then filed a consolidated complaint.

# I.    <u>Background</u>

The following facts are based on the allegations in the complaint, which the Court accepts as true under the applicable standard.  During the relevant time period, Curo provided lending products to nonprime, underbanked consumers in need of cash in the United States, Canada, and the United Kingdom.  Essentially, Curo operated as a payday lender, and its most profitable single line of business was its Canadian "single-pay" loans.  In 2016 and 2017, various new laws and regulations in Canada imposed restrictions on such loans, which served to decrease Curo's yield on the single-pay loans in Canada.  As a result, Curo developed a strategy to transition Curo's Canadian business from single-pay loans to installment and "open-end" loan products.  Pursuant to that strategy, Curo began to convert single-pay customers to installment and open-end loans in Alberta, and it then opened test stores in one market in Ontario, before effecting the transition in the broader Ontario market.

Open-end loans were expected to be less profitable for Curo initially because revenue on such loans takes longer to build and because Curo was required to account for increased loan losses "upfront" (at the time of origination).  Defendants assured investors that the transition away from Curo's most profitable line of business would not be immediate; that single-pay loans would remain viable; and that the negative impact would be minimal, would be confined to the second quarter of 2018, and had been factored into Curo's publicly-reported 2018 financial guidance.  Curo reaffirmed that guidance in late April 2018 and at the end of July 2018.  In fact, defendants had already decided to accelerate the transition in Ontario, and the transition was significantly ramped up

beginning in May 2018. The majority of the losses from the transition had already occurred by July 2018. In October 2018, Curo announced dismal third quarter financial results, and it significantly reduced its 2018 guidance for income and earnings.

Plaintiffs bring this action on behalf of a putative class of those who acquired shares of Curo between April 27, 2018, and October 24, 2018. Plaintiffs assert claims against Curo and three officer defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5. Plaintiffs also assert claims against the non-Curo defendants as control persons pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). The gist of plaintiffs' complaint is that defendants failed to disclose to the public that the transition to open-end loans in Canada would be accelerated and that Curo's short-term performance would therefore be negatively impacted; and that defendants therefore made false and misleading statements concerning the transition and Curo's expected 2018 financial performance. Defendants have moved to dismiss the claims.

## II. <u>Governing Standard</u>

The Court will dismiss a cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550

U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

The Private Securities Litigation Reform Act (PSLRA) also imposes heightened pleading standards for securities fraud actions. In such an action, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *See* 15 U.S.C. § 78u-4(b)(1). In addition, if the action requires proof of a specific state of mind, "the complaint shall, with respect to each act or omission alleged to [be a violation], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *See id.* § 78u-4(b)(2)(A).

### III.  <u>Actionable Statements</u>

Section 10(b) forbids the use, in connection with the sale of securities, of any "manipulative or deceptive device or contrivance" in contravention of the SEC's rules. *See* 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements Section 10(b) by making it unlawful in connection with the purchase or sale of any security "[t]o employ any device, scheme, or artifice to defraud;" "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made . . . not misleading;" or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *See* 17 C.F.R. § 240.10b-5. An omitted fact is material

"if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding" how to act. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (internal quotation and citation omitted). "To fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *See id.* at 231-32 (internal quotations and citation omitted). "In the context of a Rule 12(b)(6) motion, the court is reminded that materiality is a mixed question of law and fact and ordinarily should be reserved for the trier of fact." *See In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1215 (D. Kan. 2002) (citing cases).

Defendants seek dismissal of plaintiffs' claims on the basis that the statements by defendants that plaintiffs have challenged in the complaint are not actionable as a matter of law, for various reasons. Specifically, defendants assert that particular statements are not actionable or are not material because they are opinions and thus not statements of fact; they are forward-looking statements protected by the statutory safe harbor or the "bespeaks caution" doctrine; they are merely statements of corporate optimism or puffery; or they are accurate descriptions of historical performance.

The Court rejects these arguments for dismissal at this stage. Considering the totality of the allegations in the complaint, these claims, as alleged by plaintiffs, are not merely based on predictions or projections of financial performance that proved inaccurate. Rather, at their heart, these claims are based on allegations that defendants failed to disclose specific facts, particularly concerning the strategy and timing of the transition in Canada, which transition was bound to have a substantial undisclosed impact on financial

performance. Under plaintiffs' theory of the case, those omissions made the challenged statements materially false or misleading, and thus actionable.

For instance, defendants attack certain statements as protected forward-looking statements. Under the Exchange Act's "safe harbor", a defendant is not liable with respect to a forward-looking statement if the statement is identified as such and is "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." *See* 15 U.S.C. § 78u-5(c). Under the "bespeaks caution" doctrine, forward-looking representations are "considered immaterial when the defendant has provided the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of the statements at issue to nullify any potentially misleading effect." *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120 (10th Cir. 1997). Defendants cite various cautionary statements they made concerning the potential impact of government regulations and Curo's expected financial performance. The Court cannot conclude as a matter of law, however, that defendants' cautionary statements were sufficient to nullify any misleading effects of the challenged statements. This doctrine would not protect statements of then-present factual conditions, *see id.* at 1123, and plaintiffs' have challenged statements concerning the timing and strategy decisions for the transition. Nor does the doctrine protect statements that imply background factual assumptions that a reasonable investor would regard the speaker as believing to be true. *See id.* Plaintiffs have alleged that in making any forward-looking statements, defendants failed to disclose that those projections were contradicted by known facts concerning the transition and its

inevitable impact. Ultimately it is for the trier of fact in this case to decide whether defendants' cautionary statements were sufficient in this case.

Similarly, defendants argue that some of the challenged statements represent mere opinions. First, statements of opinion or belief may be actionable if the speaker did not in fact hold that belief. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1326 (2015). In addition, an omission of a material fact may make a statement of opinion misleading and thus actionable. *See id.* at 1327-32. As the Supreme Court recognized in *Omnicare*:

> [A] reasonable investor may, depending on the circumstances, understand an opinion statement to convey facts about how the speaker has formed the opinion – or, otherwise put, about the speaker's basis for holding that view. And if the real facts are otherwise, but not provided, the opinion statement will mislead its audience.

*See id.* at 1328. Thus, an investor may state a claim based on a statement of opinion by identifying "particular (and material) facts going to the basis for the issuer's opinion – facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have – whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *See id.* at 1332. "[A] statement as to beliefs or opinions . . . may be actionable if the opinion is known by the speaker at the time it is expressed to be untrue or to have no reasonable basis in fact." *See Grossman*, 120 F.3d at 1119 n.6 (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1093-94 (1991)). Plaintiffs have alleged that omissions made defendants' statements, including any statements of opinion, materially misleading. Plaintiffs have not merely made such an allegation conclusorily; rather, plaintiffs have identified particular facts concerning the

timing and strategy of the transition to open-end loans in Ontario, and the financial impact of that decision, that made the challenged statements misleading, and which suggest that the statements were made without a reasonable basis. Accordingly, the Court cannot conclude that any particular statements are not actionable because they are statements of opinion. The same is true with respect to statements that defendants cite as mere statements of puffery or of historical performance. *See id.* at 1119 (statements may not be material if merely statements of optimism that are not capable of objective verification).

Accordingly, the Court declines to conclude as a matter of law that particular statements challenged by plaintiffs in their complaint cannot have been materially misleading and thus cannot be actionable.

## IV. __Omissions__

### A. _Duty to Disclose – Misleading Statements_

Defendants also seek dismissal of plaintiffs' claims based on a failure to disclose facts concerning the transition to open-end loans in Canada. Defendants concede they had a duty to disclose any facts necessary to make their statements not materially misleading, but they argue, in fairly summary fashion, that the challenged statements are too vague to trigger such a duty and that plaintiffs have not alleged specific facts that should have been disclosed. The Court rejects this argument. Plaintiffs' complaint is detailed and contains specific allegations. Plaintiffs have identified various statements by defendants concerning the transition and Curo's financial performance, they have alleged specific facts that should

have been disclosed, and they have explained in the complaint how the statements were misleading in light of the omissions.

The Court also rejects defendants' argument that plaintiffs' claims based on omissions should be dismissed because defendants fully disclosed all risks associated with the transition as a matter of law. Defendants point to statements that government regulations could affect business and that the transition in Ontario had been accelerated somewhat. Plaintiffs' claims are not so limited, however, as they have alleged that defendants failed to disclose specific facts concerning the rapidity of the transition and the financial impact such acceleration would have. The question whether defendants' statements were misleading in light of omitted facts cannot be decided as a matter of law at this stage.

### B. _Duty to Disclose – Item 303_

Defendants also challenge plaintiffs' claims that defendants violated a duty to disclose arising under an SEC regulation known as Item 303 of Regulation S-K, 17 C.F.R. § 229.303. Item 303 provides that a company in its quarterly 10-Q reports must "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." _See id._ § 229.303(a)(3)(ii). A duty to disclose arises under Item 303 "where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation." _See Slater v. A.G. Edwards & Sons, Inc._, 719 F.3d 1190, 1197 (10th Cir. 2013) (brackets in original) (quoting SEC guidance).

The Court rejects these arguments by defendants. Defendants focus on the allegations that the transition was essentially complete and most losses were incurred by or in July 2018, and they argue that negative performance during part of the third quarter cannot constitute a "trend" that had to be revealed in the report issued at the end of that month. Plaintiffs do not merely allege a failure to report third quarter performance, however. Rather, they allege that defendants failed to disclose decisions concerning the strategy and timing of the transition, as well as the resulting impact on the 2018 performance as a whole. The Court cannot conclude as a matter of law that there was no "trend" or "uncertainty" here. The Court also rejects defendants' argument that plaintiffs have failed to allege facts to show that defendants knew of events reasonably likely to have a material financial impact. Plaintiffs have alleged that defendants decided to accelerate the transition to such a degree that a substantial impact was likely if not inevitable.[2]

## V.     Falsity with Particularity

Defendants argue that with respect to any misrepresentations alleged in the complaint, plaintiffs have failed to allege the falsity of those statements with particularity as required. In response, plaintiffs have cited their allegations that defendants made false

---

[2] In a footnote in their reply brief, defendants state that it is an open question whether Item 303 can provide an independent basis for liability. The Court does not address that question here – defendants did not provide any basis for answering that question in the negative, and any such argument raised for the first time in a reply brief would be untimely. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)).

statements concerning the transition and its pace, the continued viability of Curo's single-pay loan business in Canada, and certain certifications of effective disclosure controls made by particular defendants. Defendants repeat many of their arguments concerning whether the alleged false statements are actionable, but as concluded above, whether the statements were false or misleading remains a question for the trier of fact. Plaintiffs have alleged specific facts to show why the challenged statements were false, and thus the Court rejects this argument for dismissal.[3]

## VI.   <u>Scienter</u>

Defendants next seek dismissal based on plaintiffs' failure to allege scienter adequately. "To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation and citation omitted). Under Tenth Circuit law, the plaintiff must show intent to deceive or recklessness, and conduct is considered reckless if the defendants "(1) acted in an extreme departure from the standards of ordinary care and (2) presented a danger of misleading buyers or sellers that was known to the defendants or so obvious that the defendants must have been aware of the danger." *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236-37 (10th Cir. 2016) (internal quotation and citation omitted).

---

[3] The Court also rejects defendants' argument, made in a footnote, that plaintiffs' complaint represents an improper "puzzle pleading."

As noted above, the PSLRA requires a plaintiff in its pleading to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *See* 15 U.S.C. § 78u-4(b)(2)(A). In *Tellabs*, the Supreme Court set forth various principles concerning this heightened pleading requirement for scienter. *See Tellabs*, 551 U.S. at 322-29. First, when faced with a motion pursuant to Fed. R. Civ. P. 12(b)(6), a district court must accept all factual allegations in the complaint as true. *See id.* at 322. Second, the court must consider the complaint in its entirety – the inquiry is not whether an individual allegation, scrutinized in isolation, meets the standard. *See id.* at 322-23. Third, the court must consider both inferences favoring the plaintiff and plausible non-culpable explanations for the defendant's conduct. *See id.* at 323-24. The Supreme Court summarized this comparative inquiry as follows:

> The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the most plausible of competing inferences. Recall in this regard that § 21D(b)'s pleading requirements are but one constraint among many the PSLRA installed to screen out frivolous suits, while allowing meritorious actions to move forward. Yet the inference of scienter must be more than merely "reasonable" or "permissive" – it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*See id.* at 324 (footnote and internal quotations and citation omitted).

In their complaint, in addition to their detailed factual allegations, plaintiffs have included nine pages (comprising 22 paragraphs) of allegations directed specifically to the issue of scienter. Specifically, plaintiffs assert in this section that an inference of scienter is supported by allegations concerning defendants' post-class-period admissions; the

importance of the Ontario market to Curo's operations; defendants' experience and their monitoring of the transition in test markets; the timing of statements and the magnitude of the fraud; and events that provided a motive to deceive. Defendants nevertheless argue that the complaints' allegations are not sufficient to create a cogent inference of scienter as compelling as the innocent explanation. The Court rejects this argument for dismissal. Defendants attack each set of facts alleged by plaintiffs, arguing that the particular category does not create a strong inference of scienter here. Defendants have not shown, however, that the facts cited by plaintiffs may not be considered or have no relevance to scienter, and the Court concludes that the alleged facts, which must be accepted as true, considered as a whole, are sufficient to meet the pleading standard for scienter.

Plaintiffs first cite defendants' admissions after the class period. Specifically, plaintiffs allege that defendants effectively admitted that they did a poor job explaining the near-term negative impact of the transition; that they decided to accelerate the transition to complete it in the second and third quarters of 2018, with that transition begun by June 2018; that most of the resulting losses occurred in July 2018 prior to the reaffirmance of the 2018 guidance at the end of that month; that the impact could have been lessened if the transition had occurred over a longer period, but that they decided against installing any such "speed bumps"; and that their disclosure controls were not effective. Defendants argue that they did not in those statements admit to committing fraud or to making knowingly false statements. Defendants have not argued or shown, however, that their post-period statements are not relevant. The Court agrees with plaintiffs that these facts do support an inference that defendants were at least reckless in failing to disclose that the

decision to accelerate the transition would call into question the accuracy of the 2018 guidance.

Second, with respect to the importance of this business in Ontario, plaintiffs allege that Ontario was Curo's largest Canadian region, comprising 13 percent of the company's revenues; that Curo's single-pay Canadian loans represented Curo's most profitable line of business; and that the company discussed the impact of Canadian regulatory changes on its business. Plaintiffs argue that the importance of that business creates an inference that defendants would have been closely monitoring that impact and thus would have appreciated the true short-term financial effect of the transition (thus supporting an inference of scienter). In response, defendants argue that the Tenth Circuit has rejected such a "core operations" theory. The Tenth Circuit did no such thing in the cases cited by defendants, however. In *Weinstein v. McClendon*, 757 F.3d 1110 (10th Cir. 2014), the court held that the plaintiff's allegations of scienter were insufficient despite the plaintiff's argument that certain transactions were central to the company's goals; but that holding was based on the particular allegations there, and the court did not state that the importance to the company of particular events can never be relevant or cannot be considered for this purpose. *See id.* at 1113-14. In *Wolfe v. Aspenbio Pharma, Inc.*, 587 F. App'x 493 (10th Cir. 2014) (unpub. op.), the plaintiff argued that one would reasonably infer that the company's CEO would have closely monitored a particularly important project. *See id.* at 497. The court did state that the executive's position, standing alone could not give rise to the necessary inference of scienter; the court went on to state, however, that that position was nonetheless a fact relevant to the court's weighing of the totality of the allegations.

*See id.* at 497-98 (citing *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106 (10th Cir. 2003)). Thus, defendants' authority actually supports plaintiffs' argument that the importance of this business is relevant and may be considered for purposes of this scienter inquiry. The Court agrees with plaintiffs that the importance of this business does support an inference that defendants closely monitored the transition and its effects, and thus supports an inference of scienter here.

Third, plaintiffs point to their allegations concerning defendants' experience and monitoring of test markets. Specifically, plaintiffs allege that defendants knew that the transition away from single-pay loans in Ontario would be successful (and thus would negatively impact short-term performance) based on the following facts: the transition coincided with a traditional time of increased demand; data showed a preference for open-end loans; defendants gained experience and data from the test transitions in Alberta and one market in Ontario; the company had data on the targeted customers; the transition targeted a particularly vulnerable demographic; defendants knew that the transition would affect loan loss provisioning; and the company aggressively marketed the transition. Defendants call such allegations speculative and note that plaintiffs did not include detailed allegations concerning the data that defendants received. Nevertheless, defendants have not provided any basis to ignore these allegations, which do support plaintiffs' argument in favor of scienter.

Fourth, plaintiffs cite the timing of the challenged statements made by defendants at the end of July 2018, when the transition was essentially complete and most of the losses had already occurred, and not too long before the company's post-class-period admissions;

and the magnitude of the alleged fraud. Defendants dispute the significance of the timing, and they cite one case in which the Tenth Circuit was not persuaded by allegations concerning the magnitude of the loss. *See Anderson*, 827 F.3d at 1251. The court did not state that the magnitude of the loss could not be consider at all, however, *see id.*, and the Tenth Circuit has considered the magnitude of the alleged falsity in determining the sufficiency of scienter allegations. *See Adams*, 340 F.3d at 1106. The parties may dispute how strongly these allegations support an inference of scienter, but they do add to the totality of the facts supporting such an inference.

Fifth, plaintiffs have alleged facts that they assert support a motive to defraud, which in turn supports an inference of scienter. Specifically, plaintiffs allege that Curo's $690 million offering to raise funds during the class period provided a motive for defendants not to disclose negative financial information; and that one executive defendant's sale of a substantial number of Curo shares during the class period provided a similar motive. The Supreme Court stated in *Tellabs* that "motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of scienter inference;" but that the "absence of a motive allegation is not fatal." *See Tellabs*, 551 U.S. at 325.

Defendants dispute the strength of the inference created by these facts. Defendants argue that "general motives for management to further the interests of the corporation fail to raise an inference of scienter," as officers "always have an incentive to improve the lot of their companies." *See In re Level 3 Communications, Inc. Sec. Litig.*, 667 F.3d 1331, 1346 (10th Cir. 2012). In this case, however, plaintiffs have not alleged merely a general motive not to harm the business, but have alleged a motive to benefit specific transactions.

Defendants also note that the one executive did not sell all or most of his holdings and that no other executives are alleged to have made such trades.[4] Nevertheless, plaintiffs have cited specific facts that support an inference of motive, and such motive supports an inference of scienter.

Plaintiffs thus do not rely on one or two facts in alleging scienter, but rather have alleged a number of facts that support an inference of scienter for different reasons. Defendants have attempted to attack those facts individually, but they have not persuaded the Court that the allegations, considered in their totality, are insufficient. In their reply brief, defendants quote one court's statement characterizing an unsuccessful plaintiff's argument in this context as "zero plus zero plus zero plus zero plus zero adds up to something." *See City of Brockton Ret. Sys. v. Shaw Group Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008). Defendants have not shown, however, that any of plaintiffs' facts cannot be considered or have no relevance whatsoever; thus, this is not a case involving a bunch of zeros on plaintiffs' side of the scienter ledger. The Court concludes that plaintiffs' detailed and varied factual allegations create a cogent and compelling inference of scienter in this case.

Finally, the Court rejects defendants' argument that the inference of scienter here is not as compelling as the opposing, non-culpable explanation for defendants' conduct. This is not a case in which the plaintiffs allege only that the company and its executives should

---

[4] Defendants also argue that the inference of motive is lessened because the executive's sales were pursuant to a trading plan, but plaintiffs point out that that factor is nullified by the fact that the plan was adopted during the class period.

have foreseen negative financial events or performance, in which case the defendants could simply have been innocently inaccurate. Rather, in this case, plaintiffs have alleged that defendants adopted a particular strategy (which allegation must be accepted as true) that had obvious negative consequences in contradiction to their public statements, and innocent explanations for the failure to disclose that strategy and those consequences are not as readily apparent. Thus, the Court concludes that the inference of scienter is at least as compelling as opposing inferences. Accordingly, the Court denies defendants' motion to dismiss the complaint on this basis.[5]

## VII.    Control Person Liability

Certain defendants also seek dismissal of plaintiffs' claims under Section 20(a). That provision imposes liability on any person "who, directly or indirectly, controls any person" liable under the Act (subject to some exceptions). *See* 15 U.S.C. § 78t(a). In addition to alleging primary liability of Curo and three individual executives, plaintiffs have also alleged control person liability under Section 20(a) of the three individual executives (the "individual defendants"); three board members who founded the company (the "founder defendants"); and three related entities (the "FFL defendants") who, along with the founder defendants, are Curo's controlling stockholders.

---

[5] The Court also rejects defendants' argument that plaintiffs have engaged in improper "group pleading" with respect to scienter.

Defendants first argue that these clams cannot stand because plaintiffs' primary claims should be dismissed, for the reasons addressed above. The Court has rejected those arguments for dismissal of the claims of primary liability, however.

These defendants also argue that plaintiffs have not alleged sufficient facts to support some of their "control person" allegations. To state a prima facie case, the plaintiffs must "plead facts from which it can . . . reasonably be inferred that the individual defendants were control persons." *See Adams*, 340 F.3d at 1108 (citing *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1306 (10th Cir. 1998)). "To make this showing, the plaintiffs must point to facts which indicate that the defendants had possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *See id.* (internal quotation omitted) (quoting *Maher*, 144 F.3d at 1305). The Tenth Circuit has rejected a requirement that the plaintiff show that the defendant actually or culpably participated in the primary violation. *See Maher*, 144 F.3d at 1305. Section 20(a) is remedial and thus is to be construed liberally. *See id.* The control person determination "is a factual question not ordinarily subject to resolution on a motion to dismiss." *See id.* at 1306.

Defendants first challenge the claim under Section 20(a) against William Baker, one of the individual defendants who served as Curo's chief operating officer (COO). Defendants note that unlike the other two individual defendants (the CEO and CFO), Mr. Baker did not sign the company's reports that contain many of the challenged statements,

and they argue that his position as COO is not sufficient in the absence of an allegation that he controlled the issuance of the statements.

The Court rejects this argument. In alleging that Mr. Baker was Curo's COO, plaintiffs have effectively alleged that he exerted control over the company's operations. Moreover, plaintiffs have alleged that Mr. Baker personally made at least two of the challenged statements and that he was present and actively participated in earnings calls during which other challenged statements were made. Finally, plaintiffs have alleged facts to support the inference that Mr. Baker was involved in the transition in Canada.

In *Adams*, the Tenth Circuit held that a CEO was a control person by virtue of his position. *See Adams*, 340 F.3d at 1108. With respect to another defendant, the plaintiff relied solely on the defendant's position as CFO, and the Tenth Circuit stated that "[i]n other circumstances, this would not likely be enough satisfactorily to allege control." *See id.* at 1109. Nevertheless, the Court allowed the claim to continue because the alleged fraud related to reports of financial performance, an area over which a CFO would likely have at least indirect control. *See id.* In this case, plaintiffs have not merely relied on Mr. Baker's position as COO (with the power to direct the management of the company), but they have alleged additional facts as well, including the fact that Mr. Baker made challenged statements. The Court concludes that plaintiffs' allegations are sufficient to create a question of fact concerning Mr. Baker's control person liability.

Defendants also challenge the control-person status of the founder defendants and the FFL defendants. Plaintiffs have alleged that these defendants controlled Curo by virtue of their share ownership, power to appoint the entire board of directors, and their

relationship to the company.  In the complaint, plaintiffs cite specifically to a past admission by Curo that these defendants "collectively have the ability to elect all of the members of our board of directors and thereby control our policies and operations."

Defendants argue that the founder defendants' positions as board members are insufficient.  Indeed, in *Adams* the Tenth Circuit held that "[t]he assertion that a person was a member of a corporation's board of directors, without any allegation that the person individually exerted control or influence over the day-to-day operations of the company, does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act."  *See id.* at 1108.  Plaintiffs have made such an additional allegation here, however, alleging that the founder defendants and FFL defendants controlled Curo, including by virtue of their ability to elect the board and their relationship with the company.  Defendants also argue that having the ability to elect the board is not meaningful based on *Maher*, in which the Tenth Circuit distinguished between possession of the power to control and the mere ability to acquire such power.  *See Maher*, 144 F.3d at 1305-06.  Plaintiffs have alleged that these defendants did possess such power already, however, and the Tenth Circuit's statement of the relevant standard includes a reference to the power to direct management and policies "through the ownership of voting securities." *See Adams*, 340 F.3d at 1108.  Plaintiffs have alleged that these defendants actually exerted some measure of control, as supported by the company's own admission.  In light of the Tenth Circuit's instructions that the statute should be interpreted liberally and that this issue normally presents a question of fact for trial, the Court concludes that plaintiffs' allegations of control person liability are sufficient with respect to the founder defendants and the FFL

defendants.  The Court thus denies the motion to dismiss this claim as asserted against certain defendants.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to dismiss the consolidated complaint (Doc. # 47) is hereby **denied**.

IT IS SO ORDERED.

Dated this 3rd day of December, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
