# EXHIBIT 1

UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

KANSAS CITY

| | |
|---|---|
| YELLOWDOG PARTNERS, LP, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CURO GROUP HOLDINGS CORP., et al., )<br><br>Defendants. ) | Civil Action No. 2:18-cv-02662-JWL-KGG<br><br>CLASS ACTION |

STIPULATION OF SETTLEMENT

This Stipulation of Settlement dated as of July 31, 2020 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiff Carpenters Pension Fund of Illinois ("Lead Plaintiff"), on behalf of itself and each of the Settlement Class Members (as defined herein), by and through its counsel of record in the Litigation (as defined herein); and (ii) Defendants CURO Group Holdings Corp. ("Curo" or the "Company"), Donald F. Gayhardt, William Baker, Roger W. Dean, Doug Rippel, Chad Faulkner, Mike McKnight, Friedman Fleischer & Lowe Capital Partners II, L.P., FFL Executive Partners II, L.P., and FFL Parallel Fund II, L.P., by and through their counsel of record in the Litigation.  The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.     THE LITIGATION

The initial complaint in this case, entitled *Yellowdog Partners, LP v. CURO Group Holdings Corp., et al.*, Civil Action No. 2:18-cv-02662-JWL-KGG (D. Kan.), was filed in the United States District Court for the District of Kansas (the "Court") on December 5, 2018.  The complaint alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), against Curo and the Individual Defendants, on behalf of all persons who purchased or otherwise acquired Curo common stock from July 31, 2018 through October 24, 2018, inclusive.  On March 13, 2019, the Court appointed Carpenters Pension Fund of Illinois as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.  ECF No. 36.

On May 31, 2019, Lead Plaintiff filed the Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint").  ECF No. 42.  The Complaint alleges violations of §10(b) of the Exchange Act against Curo and the Individual Defendants, and violations of §20(a) of the Exchange Act against the Individual Defendants, the Founder Defendants and the FFL Defendants (as defined herein).  The Complaint is brought on behalf of a class of persons or entities

- 1 -

who purchased or otherwise acquired Curo common stock between April 27, 2018 through October 24, 2018, inclusive.  The Complaint alleges violations of the Exchange Act premised on allegedly false and misleading statements and omissions regarding the Company's transition away from single-pay loans in Canada and the near-term negative impact it would have on the Company's financial condition.  The Complaint further alleges that Curo and the Individual Defendants' alleged misrepresentations and omissions artificially inflated the price of Curo common stock.  The Complaint alleges that on October 24, 2018, Curo revealed financial results that were negatively impacted by the product migration in Canada, and that this disclosure caused the price of Curo common stock to drop and removed the artificial inflation from the price of Curo common stock.

On August 15, 2019, Defendants moved to dismiss the Complaint.  ECF Nos. 47-48. Following briefing (ECF Nos. 51-52), on December 3, 2019, the Court denied Defendants' motion to dismiss.  ECF No. 53.  On January 16, 2020, Defendants filed their Answer to the Complaint. ECF No. 59.  Defendants denied, and continue to deny, each and all of the Complaint's allegations of fraud or intentional misconduct.  *Id.*  Defendants contend they are not liable for any alleged false or misleading statements and that all information required to be disclosed by the federal securities laws was so disclosed.  Defendants also contend that their actions did not cause Lead Plaintiff's alleged loss, and that they did not act with scienter.

Pursuant to the Court's Initial Order Regarding Planning and Scheduling (ECF No. 56), on January 30, 2020, the parties submitted to the Court the Report of the Parties' Planning Conference, Lead Plaintiff's Initial Disclosures, and Defendants' Initial Disclosures.  On February 27, 2020, counsel for the parties appeared before Magistrate Judge Gale for a scheduling conference.  Following the conference, the Court entered the Scheduling Order.  ECF No. 71.  On February 28, 2020, the parties submitted a joint Protective Order and a Stipulation on Agreed

Discovery Protocol, which addressed provisions for electronically stored information.  ECF Nos. 70, 72.

The parties engaged in fact and class-related discovery involving Lead Plaintiff, Defendants, and several third parties, resulting in the production of more than 40,000 documents, totaling over 200,000 pages.  On May 18, 2020, Lead Plaintiff filed its motion for class certification and supporting memorandum of law.  ECF Nos. 80-81.  Defendants' time to respond to the motion for class certification has not elapsed, and the motion remains pending before the Court.

In the course of the Litigation, the parties engaged the services of a nationally recognized, experienced, and neutral third-party mediator, the Honorable Faith Hochberg (Ret.), who previously served as a District Court Judge for the District of New Jersey from 1999 until 2015. The parties exchanged detailed mediation submissions and, despite the ongoing COVID-19 pandemic, the parties and Judge Hochberg conducted a lengthy video-conference mediation on May 19, 2020 that led into the evening, but were unable to reach an agreement.  The following day, May 20, 2020, Judge Hochberg issued a mediator's proposal to settle the Litigation for $8,980,000 in cash, inclusive of all fees and costs.  On May 27, 2020, the parties accepted Judge Hochberg's mediator's proposal to settle the Litigation for that amount, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.  On June 1, 2020, Defendants informed the Court that the parties had reached an agreement-in-principle to settle the Litigation, subject to final documentation of the Settlement's terms.

## II.    LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims.  However, Lead Plaintiff and its counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the

Litigation against Defendants through trial and through appeals.  Lead Plaintiff and its counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation.  Lead Plaintiff and its counsel also are mindful of the problems of proof and possible defenses to the securities law violations asserted in the Litigation.  Lead Plaintiff and its counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class.  Based on their evaluation, Lead Plaintiff and its counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Lead Plaintiff and the Settlement Class and is fair, reasonable and adequate.

## III.     DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants, individually and collectively, have denied and continue to deny each and all of the claims alleged by Lead Plaintiff in the Litigation.  Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants also have denied and continue to deny, among other allegations, the allegations that the Lead Plaintiff or the Settlement Class have suffered any damages, that the price of Curo common stock was artificially inflated by reason of alleged misrepresentations, non-disclosures, or otherwise, or that the Lead Plaintiff or the Settlement Class were harmed by the conduct alleged in the Litigation or that could have been alleged in the Litigation.  Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.  Defendants also considered the uncertainty and risks inherent in any litigation, especially in complex cases such as

- 4 -

this Litigation.  Defendants have, therefore, determined that it is desirable and beneficial to them

to settle the Litigation in the manner and upon the terms and conditions set forth in this Stipulation.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among

Lead Plaintiff (for itself and all the Settlement Class Members) and Defendants, by and through

their counsel, that, subject to the approval of the Court, the Litigation and the Released Claims

shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed

with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the

Stipulation, as follows.

### 1.    Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Settlement Class Member whose claim for

recovery has been allowed pursuant to the terms of the Stipulation.

1.2    "Claim(s)" means a paper claim submitted on a Proof of Claim or an electronic

claim that is submitted to the Claims Administrator.

1.3    "Claims Administrator" means A.B. Data, Ltd.

1.4    "Settlement Class" means all persons or entities who purchased or otherwise

acquired the publicly traded common stock of Curo between April 27, 2018 and October 24, 2018,

inclusive, and were allegedly damaged thereby.  Excluded from the Settlement Class are Curo, the

Individual Defendants, the Founder Defendants, and the FFL Defendants; the officers and directors

of Curo and the FFL Defendants during the Settlement Class Period; members of the immediate

family of any excluded person; the legal representatives, heirs, successors, or assigns of any

excluded person or entity; and any entity in which a Defendant has or had a controlling interest

- 5 -

during the Settlement Class Period.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice.

1.5    "Settlement Class Member" or "Member of the Settlement Class" mean a Person who falls within the definition of the Settlement Class as set forth in ¶1.4 above.

1.6    "Settlement Class Period" means the period from April 27, 2018 and October 24, 2018, inclusive.

1.7    "Court" means the United States District Court for the District of Kansas.

1.8    "Curo" means CURO Group Holdings Corp.

1.9    "Defendants" means Curo, the Individual Defendants, the FFL Defendants, and the Founder Defendants (defined herein).

1.10   "Defendants' Counsel" means the law firm of Willkie Farr & Gallagher LLP and the law firm Berkowitz Oliver LLP.

1.11   "Effective Date," or the date upon which this Settlement becomes "effective," means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have occurred or have been waived.

1.12   "Escrow Account" means the interest-bearing account controlled by the Escrow Agent into which Defendants shall deposit or cause their insurance carriers to deposit the sum of $8,980,000 on behalf of Defendants.

1.13   "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its successors.

1.14   "FFL Defendants" means Friedman Fleisher & Lowe Capital Partners II, L.P., FFL Executive Partners II, L.P., and FFL Parallel Fund II, L.P.

1.15   "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit B attached hereto, shall occur:

- 6 -

(i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of Lead Plaintiff's counsel's attorneys' fees and expenses, payments to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Settlement Class, the Plan of Allocation of the Net Settlement Fund, as hereinafter defined, or the procedures for determining Authorized Claimants' recognized claims.

1.16    "Founder Defendants" means Doug Rippel, Chad Faulkner, and Mike McKnight.

1.17    "Individual Defendants" means Donald F. Gayhardt, William Baker, and Roger W. Dean.

1.18    "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B, as well as any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit B and where none of the Settling Parties elects to terminate this Settlement by reason of such variance, consistent with the terms of this Stipulation.

1.19    "Lead Counsel" means the law firm of Robbins Geller Rudman & Dowd LLP.

1.20    "Lead Plaintiff" means Carpenters Pension Fund of Illinois.

- 7 -

1.21    "Litigation" means the action captioned *Yellowdog Partners, LP v. CURO Group Holdings Corp., et al.*, Civil Action No. 2:18-cv-02662-JWL-KGG.

1.22    "Net Settlement Fund" means the Settlement Fund less any attorneys' fees, litigation expenses, and any award to Lead Plaintiff approved by the Court and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

1.23    "Notice and Administration Expenses" means costs and expenses actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, soliciting Claims, assisting with the submission of Claims, processing Proofs of Claim, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any.

1.24    "Person" means a natural person, individual, corporation (and all its divisions and subsidiaries thereof), partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.25    "Plaintiff's Counsel" means Lead Counsel and any attorney or firm who has appeared in the Litigation on behalf of Lead Plaintiff or the Settlement Class.

1.26    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of the Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.27    "Proof of Claim" means the Proof of Claim and Release form for submitting a Claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2.

1.28    "Related Parties" means each of the Defendants' respective present and former parents, subsidiaries, divisions, and affiliates and the respective present and former employees, members, partners, principals, officers, directors, attorneys, advisors, accountants, agents, auditors, and insurers of each of them; and the predecessors, successors, estates, heirs, executors, trusts, trustees, administrators, agents, representatives, and assigns of each of them, in their capacity as such.

1.29    "Released Claims" means any and all claims, demands, rights, causes of action or liabilities of every nature and description whatsoever (including Unknown Claims as set forth below), that could have been asserted in any forum, whether foreign or domestic, whether based on or arising under federal (including claims under the Securities Act of 1933 and Securities Exchange Act of 1934), state, local, or foreign statutory or common law, rule or regulation, whether fixed or contingent, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, based on, arising from or relating to:  (i) the purchase or acquisition of the common stock of Curo from April 27, 2018 to October 24, 2018 inclusive; and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in this Litigation, or that could have been alleged in this Litigation.  Released Claims does not include claims to enforce the Settlement.

1.30    "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, that arise out of, are based upon, or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation, except for claims relating to the enforcement of the Settlement.

1.31    "Released Persons" means each and all of the Defendants and their Related Parties.

1.32    "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.33    "Settlement Amount" means Eight Million Nine Hundred and Eighty Thousand Dollars ($8,980,000.00) in cash to be paid by wire transfer or check sent by overnight mail to the Escrow Agent pursuant to ¶2.1 of this Stipulation.

1.34    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.35    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.36    "Settling Parties" means, collectively, Defendants and Lead Plaintiff, on behalf of itself and the Settlement Class.

1.37    "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits hereto.

1.38    "Supplemental Agreement" means the Supplemental Agreement dated July 31, 2020, between Lead Plaintiff and Defendants.

1.39    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.40    "Unknown Claims" means: (a) any Released Claims that Lead Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected such Settlement Class Member's settlement or decisions with respect to the Settlement, including, but not limited to, the release of the Released Persons or the decision not to object to or opt out of this Settlement; and (b) any Released Defendants' Claims that the Released Persons do not know or

- 10 -

suspect to exist in his, her, or its favor at the time of the release of the Lead Plaintiff, the Settlement

Class and Plaintiff's Counsel, which if known by him, her or it, might have affected his, her or its

settlement and release of Lead Plaintiff, the Settlement Class and Plaintiff's Counsel.  With respect

to: (a) any and all Released Claims against the Released Persons; and (b) any and all Released

Defendants' Claims against Lead Plaintiff, the Settlement Class and Plaintiff's Counsel, the

Settling Parties stipulate and agree that, upon the Effective Date, they shall expressly waive, and

each of the Settlement Class Members shall be deemed to have waived, and by operation of the

Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by

the law of any state or territory or other jurisdiction or principle of common law or foreign law

that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**.

The Settling Parties may hereafter discover facts in addition to or different from those which he,

she or it now knows or believes to be true with respect to the subject matter of the Released Claims

and Released Defendants' Claims, but the Settling Parties shall expressly fully, finally, and forever

settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed

to have, and by operation of the Judgment shall have, fully, finally, and forever settled and

released, any and all Released Claims and Released Defendants' Claims, known or unknown,

suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden,

which now exist, or heretofore have existed, upon any theory of law or equity now existing or

coming into existence in the future, including, but not limited to, conduct which is negligent,

intentional, with or without malice, or a breach of any duty, law or rule, without regard to the

subsequent discovery or existence of such different or additional facts.  The Settling Parties

- 11 -

acknowledge, and Settlement Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

## 2. The Settlement

### a. The Settlement Amount

2.1     Defendants shall pay or cause their insurers to pay the Settlement Amount of $8,980,000 into the Escrow Account no later than twenty-one (21) calendar days from either entry of the Preliminary Approval Order or the last date on which Defendants and their insurers have been provided with all necessary funding instructions and a completed W-9 for the Escrow Account, whichever is later.  If the agreed upon sum is not timely transferred to the Escrow Account, after giving Defendants ten (10) calendar days to cure any such nonpayment, the Settlement may be voided at the option of Lead Plaintiff.

2.2     The obligations incurred pursuant to this Stipulation shall be in full and final disposition and settlement of all Released Claims.  The Settlement Amount paid by Defendants is their sole monetary responsibility under this Stipulation, and Settlement Class Members who do not timely seek to exclude themselves from the Settlement Class shall not look to any of the Defendants or their respective Released Persons for satisfaction of any and all Released Claims.  The Defendants are not responsible for payment of Notice and Administration Expenses, or any out-of-pocket expenses, other than out of the Settlement Amount, as provided herein.

### b. The Escrow Agent

2.3     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these

- 12 -

instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.4     The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of Lead Counsel and Defendants' Counsel.

2.5     Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

2.7     Notwithstanding the fact that the Effective Date has not yet occurred, Lead Counsel may pay from the Settlement Fund the costs and expenses reasonably and actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, administering and distributing the Net Settlement Fund to Authorized Claimants and processing Proofs of Claim.  In the event that the Settlement does not become Final, any money paid or incurred for the above purposes shall not be returned or repaid to Defendants or their insurers. Subject to ¶2.9 below, Defendants are not responsible for, and shall not be liable for, any costs in

- 13 -

connection with providing notice to the Settlement Class, locating Settlement Class Members, administering and distributing the Settlement Fund, or processing Proofs of Claim.

         **c.**    **Taxes**

2.8    (a)    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.8, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

        (b)    For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in ¶2.8(a) hereof) shall be consistent with this ¶2.8 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.8(c) hereof.  The Released Persons shall have no responsibility or liability for the Settlement Fund's tax returns or other filings.

        (c)    All (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a

"qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this ¶2.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons, the parties hereto, and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses.  The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.8.

### d.     Termination of Settlement

2.9     In the event that the Stipulation is not approved or the Stipulation is terminated, canceled, or fails to become effective for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.7 and 2.8 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from counsel to the Defendants in accordance with ¶7.4 herein.

- 15 -

### 3.     Preliminary Approval Order, CAFA Notice, and Settlement Hearing

3.1     Promptly after execution of the Stipulation and no later than August 1, 2020, Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, among other things, the preliminary approval of the Settlement set forth in the Stipulation, and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice (the "Summary Notice"), substantially in the forms of Exhibits A-1 and A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶6.1 hereof, and the date of the Settlement Hearing and notice that the Settlement Hearing may be conducted telephonically.

3.2     Within five (5) calendar days of entry of the Preliminary Approval Order, Curo shall provide the Claims Administrator, at no cost to Lead Plaintiff or the Settlement Class, reasonably available transfer records in electronic searchable form, such as Excel, containing the names and addresses of registered owners of Curo common stock during the Settlement Class Period.  It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court. Settlement Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

3.3     Lead Counsel shall request that after notice is given, the Court hold the Settlement Hearing and approve the Settlement of the Litigation as set forth herein.  At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application and Lead Plaintiff's request for an award pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Settlement Class.

3.4     Pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, *et seq.* ("CAFA"), no later than ten (10) calendar days after this Stipulation is filed with the Court, Curo shall serve or cause to be served proper notice of the proposed Settlement upon those who are entitled to notice pursuant to CAFA.  Curo is solely responsible for the costs of the CAFA notice and administering the CAFA notice.

**4.     Releases**

4.1     Upon the Effective Date, Lead Plaintiff shall, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Settlement Class Member executes and delivers the Proof of Claim or shares in the Settlement Fund.  Claims to enforce the terms of this Stipulation are not released.

4.2     The Proof of Claim to be executed by Settlement Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3     Upon the Effective Date, all Settlement Class Members and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Persons.

4.4     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Defendants' Claims against Lead Plaintiff, the Settlement Class, and Plaintiff's Counsel.  Claims to enforce the terms of this Stipulation and the Settlement are not released.

- 17 -

5.    **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of Lead Counsel, and as may be necessary or as circumstances may require, the Court, shall administer and calculate the Claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2    The Settlement Fund shall be applied as follows:

(a)    to pay all Notice and Administration Expenses;

(b)    to pay the Taxes and Tax Expenses described in ¶2.8 hereof;

(c)    to pay attorneys' fees and expenses to Lead Counsel (the "Fee and Expense Award"), and to pay Lead Plaintiff an award pursuant to 15 U.S.C. §78u-4(a)(4), if and to the extent allowed by the Court; and

(d)    after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3    After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

5.4    Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified therein.  Any Person who submits a Proof of Claim shall reasonably cooperate with

the Claims Administrator, including by promptly responding to any inquiry made by the Claims Administrator.

5.5     All Members of the Settlement Class (except Persons who request exclusion) shall be bound by all determinations and judgments in the Litigation concerning the Settlement, including, but not limited to, the releases provided for therein, whether favorable or unfavorable to the Settlement Class, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim form or any similar document, any distribution from the Settlement Fund or the Net Settlement Fund.

5.6     Lead Counsel shall cause to be provided to Defendants' Counsel copies of all requests for exclusion, and any written revocation of requests for exclusion, as expeditiously as possible and in any event no later than fourteen (14) days prior to the Settlement Hearing.

5.7     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Persons concerning the Released Claims.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

5.8     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the

- 19 -

Court.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants, who cash their initial distribution payment and who would receive a distribution of at least $10.00, in an equitable and economic fashion.  Thereafter, any *de minimis* balance which still remains in the Net Settlement Fund shall be donated to the Kansas Bar Foundation.

5.9     This Settlement is not a claims made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to Defendants or their insurers.  Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  No person shall have any claim of any kind against the Defendants or their Related Parties with respect to the matters set forth in ¶¶5.1-5.8 hereof; and the Settlement Class Members, Lead Plaintiff, and Lead Counsel release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.10    No Person shall have any claim against Lead Plaintiff, Lead Counsel, Defendants, their Related Parties, the Claims Administrator or other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  This does not include any claim by any party for breach of this Stipulation.

- 20 -

5.11    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's Claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.

### 6.    Plaintiff's Counsel's Attorneys' Fees and Expenses

6.1    Lead Counsel may submit an application or applications for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Application").  In addition, Lead Plaintiff may request an award in connection with its representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4).  Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2    The fees and expenses, as awarded by the Court, shall be paid to Lead Counsel, as ordered, immediately after the Court executes the Judgment and an order awarding such fees and expenses.  Lead Counsel may thereafter allocate the attorneys' fees among other Plaintiff's Counsel, if any, in a manner in which it in good faith believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3    In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination

- 21 -

becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Plaintiff's Counsel who received any portion of the Fee and Expense Award shall be obligated, within ten (10) calendar days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.  Each such Plaintiff's Counsel's law firm receiving fees and expenses, as a condition of receiving the Fee and Expense Award, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are each jointly and severally liable and responsible for any required repayment.

6.4     The procedure for and the allowance or disallowance by the Court of any applications by counsel for the Lead Plaintiff for attorneys' fees and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including, without limitation, the releases contained herein).

6.5     Any attorneys' fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  Defendants and their Related Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Plaintiff's Counsel or Lead Plaintiff.

4846-9371-6420.v2

7.      **Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof, substantially in the form set forth in Exhibit A attached hereto;

(b)     the Settlement Amount has been deposited into the Escrow Account;

(c)     Curo has not exercised its option to terminate the Stipulation pursuant to ¶7.3 hereof;

(d)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto; and

(e)     the Judgment has become Final, as defined in ¶1.15 hereof.

7.2     Upon the Effective Date, any and all remaining interest or right of the Defendants or the Defendants' insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the releases herein shall be effective.  If the conditions specified in ¶7.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶7.4 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Stipulation.

7.3     Only Curo possesses the option to terminate the Settlement in the event that valid requests for exclusion from the Settlement Class exceed the criteria set forth in the Supplemental Agreement, executed between Lead Plaintiff and Curo through their respective counsel concurrently with this agreement.  The terms of the Supplemental Agreement shall not be disclosed in any other manner other than the statements herein and in the Notice, or as otherwise provided in the Supplemental Agreement unless and until the Court otherwise directs or a dispute arises

- 23 -

between Lead Plaintiff and Defendants concerning its interpretation or application. If submission of the Supplemental Agreement to the Court is required for resolution of a dispute or is otherwise ordered by the Court, the parties will undertake to have the Court review the Supplemental Agreement *in camera* without filing it on the docket. If the Court requires that the Supplemental Agreement be filed, the parties shall request that it be filed under seal or with the percentage redacted.

7.4     Unless otherwise ordered by the Court, in the event the Stipulation is not approved or this Stipulation is terminated, canceled, or the Effective Date otherwise fails to occur, within ten (10) calendar days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less Taxes, Tax Expenses, and Notice and Administration Expenses which have either been disbursed pursuant to ¶¶2.7 and 2.8 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.7 and 2.8 hereof, shall be refunded by the Escrow Agent pursuant to written instructions from Defendants' Counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written instructions from Defendants' Counsel.

7.5     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of May 27, 2020. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶, 2.6-2.9, 6.3-6.5, 7.4-7.6, and 8.5-8.6 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of

- 24 -

any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to any of Plaintiff's Counsel or expenses to the Lead Plaintiff shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

7.6     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor any of its counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.7 or 2.8.  In addition, any expenses already incurred pursuant to ¶¶2.7 or 2.8 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.9 and 7.4 hereof.

7.7     Defendants warrant and represent that they are not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time the Stipulation is executed.  This representation is made by Defendants and not by Defendants' Counsel.  In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Settlement Fund, or any portion thereof, by or on behalf of Defendants to be a voidable preference, voidable transfer, fraudulent transfer, or similar transaction under Title 11 of the United States Code (Bankruptcy), or applicable state law, and any portion thereof is required to be refunded and such amount is not promptly deposited in the Settlement Fund by or on behalf of any Defendants, then, at the election of Lead Plaintiff the Settlement may be terminated and the Judgment entered in favor of Defendants pursuant to the Settlement shall be null and void.  Alternatively, at the election of Lead Plaintiff, the Settling Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of the Defendants and that the Defendants and Lead Plaintiff and the Members of the Settlement Class shall be restored to their litigation positions as

- 25 -

of May 27, 2020 and the Settlement Fund, less any amounts disbursed or incurred pursuant to ¶2.7 and ¶2.8, shall be promptly returned.

**8.      Miscellaneous Provisions**

8.1      The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.2      The Settlement is contingent upon the Court's entry of provisions in the Judgment containing the broadest bar order permissible by law, consistent with the PSLRA, barring contribution claims against and among any Defendant, provided, however, that nothing herein shall release or alter the contractual rights, if any, under the terms of any written agreement (i) between or among the Defendants. Further, the bar order shall not preclude any Defendant from seeking to enforce any right of indemnification or contribution with respect to the payment of the Settlement Amount or Defense Costs.

8.3      The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Judgment will contain a finding that, during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel and with the assistance of a neutral third-party mediator, Judge Faith Hochberg.

4846-9371-6420.v2

8.4     Lead Plaintiff and Plaintiff's Counsel and Defendants and Defendants' Counsel shall not make any accusations of wrongful or actionable conduct by any party concerning the prosecution, defense, and resolution of the Litigation, and shall not otherwise suggest that the Settlement embodied in this Stipulation constitutes an admission of any claim or defense alleged. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

8.5     Neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants or their respective Related Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or their respective Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.   The Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.6     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

8.7     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any Exhibit

- 27 -

attached hereto or other document incorporated by reference herein, the terms of this Stipulation shall prevail.

8.8     This Stipulation, along with its Exhibits, may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.9     The waiver by any party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation or a waiver by any party other than the waiving party.

8.10    The Stipulation and the Exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein or in a separate written agreement, each party shall bear its own costs.

8.11    Lead Counsel, on behalf of the Settlement Class, is expressly authorized by the Lead Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class that it deems appropriate.

8.12    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.13    The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or pdf'd via e-mail shall be deemed originals.

4846-9371-6420.v2

8.14    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.  No assignment shall relieve any party hereto of obligations hereunder.

8.15    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation and matters related to the Settlement.  Any such actions, motions, or disputes arising under or to enforce this Stipulation or any portion thereof shall be commenced and maintained only in this Court.

8.16    Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

8.17    This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Kansas, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Kansas without giving effect to that State's choice-of-law principles.  This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between all parties and that all parties have contributed substantially and materially to the preparation of this Stipulation.

8.18    Computing Deadlines:  For all deadlines under this Stipulation, to compute deadlines (a) exclude the day of the event that triggers the period; (b) count every calendar day, including intermediate Saturdays, Sundays and legal holidays; and (c) include the last day of the

period, but if the last day is a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday.

8.19    Time for Compliance:  If the date for performance of any act required by or under this Stipulation is due to be performed on or by a Saturday, Sunday, or legal holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of July 31, 2020.

ROBBINS GELLER RUDMAN
& DOWD LLP

ROBERT J. ROBBINS

JACK REISE (admitted *pro hac vice*)
ROBERT J. ROBBINS (admitted *pro hac vice*)
KATHLEEN B. DOUGLAS (admitted *pro hac vice*)
MAUREEN E. MUELLER (admitted *pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
rrobbins@rgrdlaw.com
kdouglas@rgrdlaw.com
mmueller@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

STUEVE SIEGEL HANSON LLP
NORMAN E. SIEGEL, D. Kan. #70354
RACHEL E. SCHWARTZ, KS #21782
460 Nichols Road, Suite 200
Kansas City, MO  64112
Telephone:  816/714-7100
816/714-7101 (fax)
siegel@stuevesiegel.com
schwartz@stuevesiegel.com

*Local Counsel for Lead Plaintiff*

- 30 -

4846-9371-6420.v2

CAVANAGH & O'HARA
JOHN T. LONG (admitted *pro hac vice*)
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)
johnlong@cavanagh-ohara.com

*Additional Counsel for Lead Plaintiff*


BERKOWITZ OLIVER LLP


ANTHONY J. DURONE

ANTHONY J. DURONE #17492
2600 Grand Boulevard, Suite 1200
Kansas City, MO  64108
Telephone:  816/627-0217
816/561-1888 (fax)
adurone@berkowitzoliver.com

WILLKIE FARR & GALLAGHER LLP


TODD G. COSENZA

TODD G. COSENZA (admitted *pro hac vice*)
TARIQ MUNDIYA (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY  10019
Telephone:  212/728-8677
212/728-9677 (fax)
tcosenza@willkie.com
tmundiya@willkie.com

Sarah Matlack Wastler (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, DC  20006-1238
Telephone:  202/303-1257
202/303-2257 (fax)
swastler@willkie.com

*Counsel for Defendants*


- 31 -