UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

KANSAS CITY

| | |
|---|---|
| YELLOWDOG PARTNERS, LP, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CURO GROUP HOLDINGS CORP., et al., )<br><br>Defendants. ) | Civil Action No. 2:18-cv-02662-JWL-KGG<br><br>CLASS ACTION |

MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES, EXPENSES AND LEAD PLAINTIFF AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4)

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................4

III.    LEAD PLAINTIFF HAS PROVIDED SUFFICIENT NOTICE TO THE
        SETTLEMENT CLASS IN COMPLIANCE WITH RULE 23 AND DUE
        PROCESS ...........................................................................................................6

IV.     FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED.................7

        A.      Lead Plaintiff and Lead Counsel Have Adequately Represented the
                Settlement Class...................................................................................8

        B.      The Proposed Settlement Was Negotiated at Arm's Length and With an
                Experienced Mediator ........................................................................10

        C.      The Costs, Risks, and Delay of Trial and Appeal...............................11

                1.      Serious Legal and Factual Questions Placed the Litigation's
                        Outcome in Doubt.....................................................................11

                2.      The Recovery Is Particularly Significant in Light of the Delay in
                        Further Litigation ....................................................................14

        D.      The Proposed Method for Distributing Relief Is Effective..................16

        E.      The Requested Attorneys' Fees .........................................................16

        F.      The Settling Parties Have No Additional Agreement Other Than an
                Agreement to Address Requests for Exclusion ...................................17

        G.      Settlement Class Members Are Treated Equitably...............................18

        H.      The Judgment of the Settling Parties ..................................................18

V.      THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
        ADEQUATE.....................................................................................................19

VI.     CERTIFICATION OF THE SETTLEMENT CLASS REMAINS
        APPROPRIATE................................................................................................20

VII.    THE REQUESTED ATTORNEYS' FEES AND EXPENSE AWARD SHOULD
        BE APPROVED ...............................................................................................21

        A.      Lead Counsel Is Entitled to a Reasonable Percentage of the Common Fund........21

**Page**

B.    Lead Counsel Seeks 30% of the Fund, a Percentage Consistent with What Courts in This Circuit Have Found to Be Reasonable ........................................... 23

C.    The "*Johnson* Factors" Support the Reasonableness of Lead Counsel's Fee Request ................................................................................................................. 25

    1.    The Amount Involved and the Results Obtained ...................................... 26

    2.    The Customary Fee – the Percentage Requested Is Consistent with Those Typically Awarded in This Circuit ................................................ 27

    3.    Time and Labor Required ........................................................................ 27

        a.    The Amount of Time and Labor Dedicated by Lead Counsel Justifies the Requested Fee ................................................ 27

        b.    A Lodestar Cross-Check Also Supports Lead Counsel's Fee Request ..................................................................................... 28

    4.    The Novelty and Difficulty of the Legal and Factual Questions Support Lead Counsel's Fee Request ....................................................... 29

        a.    Risk in Establishing Liability .......................................................... 30

        b.    Risk in Establishing Causation and Damages ............................... 30

    5.    The Skill Required and the Experience, Reputation, and Ability of Lead Counsel Support the Requested Fee .................................................. 31

    6.    The Contingent Nature of the Fee Weighs in Favor of the Requested Award .................................................................................... 32

    7.    The Preclusion of Other Employment by Plaintiff's Counsel Supports the Requested Fee .................................................................... 33

    8.    The Undesirability of the Case Supports the Requested Attorneys' Fees and Expenses ................................................................................. 33

D.    The Reaction to the Requested Fee by the Settlement Class Further Supports Its Reasonableness .................................................................................. 34

E.    Plaintiff's Counsel Are Entitled to an Award of Their Reasonable Litigation Expenses .............................................................................................. 34

4844-6492-2833.v5

**Page**

VIII.   THE REQUESTED PSLRA AWARD FOR LEAD PLAINTIFF SHOULD BE APPROVED .................................................................................................................35

IX.    CONCLUSION ......................................................................................................36

4844-6492-2833.v5

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Merit Energy Co.*,
No. 07-cv-00916-LTB-BNB, 2009 U.S. Dist. LEXIS 100681
(D. Colo. Oct. 20, 2009) .........................................................................................22

*Bailes v. Lineage Logistics, LLC*,
No. 15-2457-DDC-TJJ, 2017 WL 4758927
(D. Kan. Oct. 20, 2017).........................................................................................24

*Barnwell v. Corr. Corp. of Am.*,
No. 2:08-cv-02151-JWL-DJW, slip op.
(D. Kan. Feb. 12, 2009) .........................................................................................24

*Barr v. Qwest Coms. Co., LLC*,
No. 1:01-cv-00748-WYD-KLM, 2013 WL 141565
(D. Colo. Jan. 11, 2013).........................................................................................29

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)...............................................................................................21

*Bennett v. Sprint Nextel Corp.*,
No. 2:09-cv-02122-EFM-GEB, slip op.
(D. Kan. Aug. 12, 2015) .........................................................................................28

*Bennett v. Sprint Nextel Corp.*,
No. 2:09-cv-02122-EFM-KMH, slip op.
(D. Kan. Apr. 10, 2015) .....................................................................................7, 36

*Blum v. Stenson*,
465 U.S. 886 (1984)...............................................................................................21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...............................................................................................21

*Brewer v. S. Union Co.*,
607 F. Supp. 1511 (D. Colo. 1984).......................................................................28

*Brown v. Phillips Petroleum Co.*,
838 F.2d 451 (10th Cir. 1988) ........................................................................25, 26

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
No. 17-2142-JWB-KGG, 2020 WL 3288059
(D. Kan. June 18, 2020) ...........................................................10, 11, 15, 24

Page

*Christine Asia Co. Ltd. v. Yun Ma*,
  No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534
  (S.D.N.Y. Oct. 16, 2019) ..................................................................................11, 13, 17

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*,
  No. 89 Civ. 822, 1993 U.S. Dist. LEXIS 19969
  (W.D. Okla. June 8, 1993) ..............................................................................................25

*Cox v. Spring Coms. Co. L.P.*,
  No. 6:10-cv-01262-KGG, 2012 WL 5512381
  (D. Kan. Nov. 14, 2012) ..................................................................................................28

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ..................................................................................................21, 30

*Eatinger v. BP America Prod. Co.*,
  No. 6:07-cv-01266-EFM-KMH, slip op.
  (D. Kan. Sept. 17, 2012) .................................................................................................33

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...........................................................................................................6

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ...........................................................................................17

*Fankhouser v. XTO Energy, Inc*.,
  No. CIV-07-798-L, 2012 WL 4867715
  (W.D. Okla. Oct. 12, 2012) ..............................................................................................24

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) .....................................................................................21, 22

*Grady v. De Ville Motor Hotel, Inc.*,
  415 F.2d 449 (10th Cir. 1969) ...........................................................................................7

*Hapka v. CareCentrix, Inc.*,
  No. 2:16-CV-02372-KGG, 2018 WL 1871449
  (D. Kan. Feb. 15, 2018) ...................................................................................................18

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983
  (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom. Hefler v. Pekoc*,
  802 F. App'x 285 (9th Cir. 2020) ....................................................................................20

- v -

**Page**

*Horton v. Molina Healthcare, Inc*.,
No. 17-cv-0266-CVE-JFJ, 2019 WL 2207676
(N.D. Okla. May 22, 2019) ....................................................................................10

*In King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. Aug. 10, 1976) ......................................................15, 29

*In re Am. Int'l Grp., Inc.*,
No. 04 Civ. 8141 (DAB), 2010 WL 5060697
(S.D.N.Y. Dec. 2, 2010),
*aff'd*, 452 F. App'x 75 (2d Cir. 2012) .................................................................36

*In re Boston Chicken, Inc. Sec. Litig*.,
No. 97-cv-1308-WDM-PAC, 2006 U.S. Dist. LEXIS 56267
(D. Colo. Aug. 10, 2006) .......................................................................................25

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..................................................................................31

*In re Charter Commc'ns, Inc.*,
No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772
(E.D. Mo. June 30, 2005) ......................................................................................29

*In re Cont'l Ill. Sec. Litig*.,
962 F.2d 566 (7th Cir. 1992) ................................................................................23

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ...................................................................... *passim*

*In re Crocs., Inc. Sec. Litig.*,
No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396
(D. Colo. Sept. 18, 2014) .......................................................................................28

*In re Crocs, Inc. Sec. Litig.*,
No. 07-cv-02351-PAB-KLM, 2014 WL 4670886
(D. Colo. Sept. 18, 2014) .......................................................................................24

*In re EVCI Career Coll. Holding Corp. Sec. Litig*.,
No. 05 Civ. 10240 (CM), 2007 WL 2230177
(S.D.N.Y. July 27, 2007) .......................................................................................31

4844-6492-2833.v5

Page

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018),
   *aff'd sub nom. In re Facebook, Inc.*,
   822 F. App'x 40 (2d Cir. 2020) ...................................................................11

*In re Marsh & McLennan Cos. Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546
   (S.D.N.Y. Dec. 23, 2009)..............................................................................36

*In re Miniscribe Corp.*,
   309 F.3d 1234 (10th Cir. 2002) ....................................................................28

*In re Molycorp, Inc. Sec. Litig.*,
   No. 1:12-CV-00292-RM-KMT, 2017 WL 4333999
   (D. Colo. Mar. 6, 2017)...................................................................................7

*In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*,
   149 P.3d 976 (N.M. Ct. App. 2006) ..............................................................23

*In re Novell, Inc. Sec. Litig.*,
   No. 2:99-cv-00995-TC, slip op.
   (D. Utah May 26, 2005).................................................................................25

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
   No. 09-md-02063-JLK-KMT, 2014 WL 12768451
   (D. Colo. July 31, 2014)................................................................................24

*In re Pre-Paid Sec., Inc. Litig.*,
   No. 5:01-cv-00182-C, slip op.
   (W.D. Okla. Dec. 10, 2004)...........................................................................25

*In re Prothena Corp. PLC Sec. Litig.*,
   No. 1:18-cv-06425-ALC, 2019 WL 6528672
   (S.D.N.Y. Dec. 4, 2019).................................................................................24

*In re Rhythms Sec. Litig.*,
   No. 1:02-cv-00035 (JLK)(CBS), slip op.
   (D. Colo. Apr. 3, 2009)..................................................................................24

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)...........................................................................22

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   461 F. Supp. 2d 383 (D. Md. 2006)...............................................................22

4844-6492-2833.v5

Page

*In re Samsung Top-load Washing Mach. Mktg., Sales*
   *Practices & Prods. Liab. Litig.*,
   No. 17-ML-2792-D, 2020 WL 2616711
   (W.D. Okla. May 22, 2020) ........................................................................8

*In re Sprint Corp. ERISA Litig.*,
   443 F. Supp. 2d 1249 (D. Kan. 2006).................................................12, 22, 34

*In re St. Paul Travelers Sec. Litig.*,
   No. 04-3801, 2006 WL 1116118
   (D. Minn. Apr. 25, 2006) .........................................................................23

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. Dec. 7, 2018) ............................................ *passim*

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................21, 23

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012) ....................................................... *passim*

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
   No. 02-MD-1468-JWL, 2011 WL 1808038
   (D. Kan. May 12, 2011) ...........................................................................24

*In re Vivendi Universal, S.A. Sec. Litig.*,
   842 F. Supp. 2d 522 (S.D.N.Y. 2012).......................................................33

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...........................................................31

*In re Williams Sec. Litig.-WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) ...............................................................33

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005).................................................22, 36

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964)................................................................................21

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ...........................................25, 26, 31, 34

Page

*Lewis v. Wal-Mart Stores, Inc*.,
No. 02-CV-0944-CVE-FHM, 2006 U.S. Dist. LEXIS 87681
(N.D. Okla. Dec. 4, 2006) .......................................................................................22, 25

*Lowery v. City of Albuquerque*,
No. CIV 09-0457 JB/WDS, 2013 WL 1010384
(D.N.M. Feb. 27, 2013) ...................................................................................................24

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) ................................................................................15, 19

*Lucas v. Kmart Corp.*,
No. 99-cv-01923-JLK-CBS, 2006 U.S. Dist. LEXIS 51420
(D. Colo. July 27, 2006)...................................................................................................33

*McNeely v. Nat'l Mobile Health Care, LLC*,
No. CIV-07-933-M, 2008 WL 4816510
(W.D. Okla. Oct. 27, 2008)...................................................................................12, 15, 24

*Millsap v. McDonnell Douglas Corp*.,
No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223
(N.D. Okla. May 28, 2003) .....................................................................................22, 26, 34

*Missouri v. Jenkins*,
491 U.S. 274 (1989)...........................................................................................................23

*Morrison v. Nat'l Austl. Bank Ltd*.,
561 U.S. 247 (2010)...........................................................................................................33

*Nakamura v. Wells Fargo Bank, N.A.*,
No. 17-4029-DDC-GEB, 2019 WL 2185081
(D. Kan. May 21, 2019).....................................................................................................24

*Nieberding v. Barrette Outdoor Living, Inc.*,
129 F. Supp. 3d 1236 (D. Kan. 2015)...............................................................................18

*O'Dowd v. Anthem, Inc*.,
No. 14-cv-02787-KLM-NYW, 2019 WL 4279123
(D. Colo. Sept. 9, 2019)....................................................................................................18

*Ogden v. Figgins*,
No. 2:16-CV-02268-JAR, 2017 WL 5068906
(D. Kan. Nov. 3, 2017) .....................................................................................................10

4844-6492-2833.v5

Page

*Oppenlander v. Standard Oil Co.*,
  64 F.R.D. 597 (D. Colo. 1974) ........................................................................26

*Ramah Navajo Chapter v. Norton*,
  250 F. Supp. 2d 1303 (D.N.M. 2002) ...............................................................22

*Reiskin v. Reg'l Transp. Dist. Colorado*,
  No. 14-CV-03111-CMA-KLM, 2017 WL 5990103
  (D. Colo. July 11, 2017).....................................................................................9

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ............................................................................15

*Rutter & Wilbanks Corp. v. Shell Oil, Co.*,
  314 F.3d 1180 (10th Cir. 2002) ..........................................................................9

*Shapiro v. Alliance MMA, Inc.*,
  No. 17-2583, 2018 WL 3158812
  (D.N.J. June 28, 2018) ......................................................................................10

*Shaw v. Interthinx, Inc.*,
  No. 13-CV-01229-REB-NYW, 2015 WL 1867861
  (D. Colo. Apr. 22, 2015)......................................................................7, 23, 32

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...........................................................................................21

*Tennille v. W. Union Co.*,
  785 F.3d 422 (10th Cir. 2015) ...............................................................6, 8, 11

*Tennille v. W. Union Co.*,
  No. 09-CV-00938-JLK-KMT, 2014 WL 5394624
  (D. Colo. Oct. 15, 2014),
  *appeal dismissed*, 809 F.3d 555 (10th Cir. 2015)............................................15

*Uselton v. Com. Lovelace Motor Freight, Inc.*,
  9 F.3d 849 (10th Cir. 1993) .........................................................................22, 26

*Vaszlavik v. Storage Tech. Corp.*,
  No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140
  (D. Colo. Mar. 9, 2000)............................................................................. *passim*

*Yedlowski v. Roka Bioscience, Inc.*,
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336
(D.N.J. Nov. 10, 2016)...........................................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78t(a) ...........................................................................................................30
§78u-4 ..................................................................................................... *passim*
§78u-4(a)(4) .............................................................................1, 3, 35, 36
§78u-4(a)(6) ...................................................................................................21
§78u-4(a)(7) .....................................................................................................6

Federal Rules of Civil Procedure
Rule 23 ............................................................................................................16
Rule 23(a)..........................................................................................................3
Rule 23(a)(4) .....................................................................................................8
Rules 23(b)(3) ...................................................................................................3
Rule 23(c).........................................................................................................13
Rule 23(c)(2)(B)............................................................................................6, 7
Rule 23(e)(1) .....................................................................................................6
Rule 23(e)(2) .............................................................................................1, 8, 11
Rule 23(e)(2)(A) ...............................................................................................9
Rule 23(e)(2)(B)........................................................................................10, 11
Rule 23(e)(1)(B)................................................................................................6
Rule 23(e)(2)(C)(i).........................................................................................11
Rule 23(e)(2)(C)(ii)........................................................................................16
Rule 23(e)(2)(C)(iii).......................................................................................16
Rule 23(e)(2)(C)(iv).......................................................................................17
Rule 23(e)(2)(D) ............................................................................................18
Rule 23(e)(3)...................................................................................................17

17 C.F.R.
§240.10b-5 .........................................................................................................4

Local Rule 5.4.2(c)(3)...........................................................................................31

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*
(NERA Feb. 12, 2020) ......................................................................................14, 26

**Page**

Report of the Third Circuit Task Force,
  *Court Awarded Attorney Fees*,
  108 F.R.D. 237 (3d Cir. 1985)..................................................................................22

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 104-369 (1995),
  *reprinted in* 1995 U.S.C.C.A.N. 730 ........................................................................35

4844-6492-2833.v5

Lead Plaintiff Carpenters Pension Fund of Illinois ("Carpenters" or "Lead Plaintiff"), on behalf of itself and the Settlement Class, respectfully submits this memorandum of law in support of its: (i) motion for final approval of the all-cash $8,980,000 proposed Settlement ("Settlement Amount"), approval of the Plan of Allocation, and final certification of the Settlement Class[1]; and (ii) motion for an award of attorneys' fees and expenses, and Lead Plaintiff award pursuant to 15 U.S.C. §78u-4(a)(4).

## I.    INTRODUCTION

Lead Plaintiff has obtained a Settlement of this securities class action for $8,980,000.00 in cash. It is a very good recovery for the Settlement Class and satisfies each of the Rule 23(e)(2) factors as well as the factors considered by the Tenth Circuit in deciding whether a settlement is fair, reasonable, and adequate. The Settlement represents a significant percentage of estimated recoverable damages and was negotiated by counsel with extensive experience in securities class actions who intelligently evaluated the merits of Lead Plaintiff's claims, including the risks to recovery and likelihood of ultimate success. The Settlement is particularly beneficial to the Settlement Class in light of the many risks Lead Plaintiff faced, including that: (i) the Court could deny Lead Plaintiff's outstanding motion to certify the class, or reduce the length of the class period; (ii) Defendants could prevail at summary judgment at the conclusion of discovery; and (iii) protracted and expensive continued litigation, including trial and likely appeals, could ultimately lead to a much smaller recovery or no recovery at all.

Before agreeing to the Settlement, Lead Counsel had a thorough understanding of the strengths and weaknesses of the case. Indeed, the Settlement is the result of hard-fought litigation

---

[1]    All capitalized terms that are not otherwise defined herein have the same meanings ascribed to them in the Stipulation of Settlement, dated as of July 31, 2020 ("Stipulation"). ECF No. 91-1. Citations are omitted and emphasis is added throughout unless otherwise noted.

4844-6492-2833.v5

among sophisticated parties and experienced and well-informed counsel. Lead Counsel undertook a thorough investigation, which resulted in extending the class period and adding control person defendants. In addition, contentious discovery, resulting in over 215,000 pages of documents obtained from Defendants and third parties, was ongoing. Lead Plaintiff filed its motion for class certification together with the expert report of Chad Coffman, CFA in support thereof. Moreover, the Settling Parties exchanged detailed mediation statements prior to a 10-hour mediation session with an experienced mediator, the Honorable Faith Hochberg (Ret.).

On September 4, 2020, the Court granted preliminary approval of the Settlement, preliminarily certified the Settlement Class, and permitted notice to the Settlement Class ("Preliminary Approval Order"), finding that the Settlement was fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. ECF No. 96, ¶¶1, 2, 4. Nothing has changed to disturb the Court's assessment of the Settlement at preliminary approval.

In accordance with the Preliminary Approval Order, Lead Counsel ensured distribution of the robust Notice of Pendency and Proposed Settlement of Class Action ("Notice") and publication of the Summary Notice. *See* Declaration of Eric A. Nordskog Regarding: (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Nordskog Decl."), ¶¶2-11, submitted herewith as Exhibit 1. The Claims Administrator, A.B. Data, Ltd., on September 18, 2020, commenced mailing copies of the Notice Packet (defined herein) by First-Class Mail to all Settlement Class Members who could be identified with reasonable effort and posted it on the Settlement website along with comprehensive information about the Settlement and how to submit a claim both electronically and by mail. *Id.*, ¶¶4-8, 11. Further, the Summary Notice was published in both the *The Wall Street Journal* and over *PR Newswire* on September 25, 2020. *Id.*, ¶9. To date, not a single objection to the proposed Settlement has been made, and no requests for exclusion have been received. *Id.*, ¶¶12-13.

The Notice also set forth the Plan of Allocation which governs how claims will be calculated and how Settlement proceeds will be allocated among Authorized Claimants. The Plan of Allocation was prepared with the assistance of Lead Counsel's in-house damages consultant and is based on the out-of-pocket measure of damages, *i.e.*, the difference between what Settlement Class Members paid for their Curo common stock during the Settlement Class Period and what they would have paid had the alleged misstatements not been made or the omitted information been disclosed. To date, not a single objection to the Plan of Allocation has been filed.

Lead Counsel has concluded that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and in the best interest of the Settlement Class. *See* Exhibit 2, Declaration of Robert J. Robbins in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and an Award of Attorneys' Fees, Expenses and Lead Plaintiff Award Pursuant to 15 U.S.C. §78u-4(a)(4) ("Robbins Decl." or "Robbins Declaration"), ¶51, *generally*. The Settlement and Plan of Allocation warrant the Court's approval, and the Settlement Class satisfies the requirements for class certification under Rules 23(a) and (b)(3). Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement as set forth in the Stipulation and the proposed Plan of Allocation as fair, reasonable, and adequate.

In addition, as compensation for their persistent and effective advocacy in the face of considerable opposition and risk, and with the support of the Lead Plaintiff, Lead Counsel respectfully moves the Court for an award of attorneys' fees in the amount of 30% of the Settlement Amount, litigation expenses in the amount of $123,584.38, and $2,500 for Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Settlement Class.

As discussed herein, Lead Counsel's fee request is reasonable and consistent with the percentages typically awarded in securities class actions in this and other Circuits. As described in

pedantically

detail in the declarations of Plaintiffs' Counsel,[2] Plaintiffs' Counsel have devoted substantial efforts and resources litigating this case and achieving this Settlement.  Plaintiffs' Counsel undertook the representation of the Settlement Class on a contingent fee basis and no payment has been made to date for their service or for the litigation expenses they have advanced on behalf of the Settlement Class.

For all the reasons set forth herein and in the accompanying declarations, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards and should be awarded by the Court.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This securities fraud class action alleges violations of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, against Defendants on behalf of a class of purchasers of Curo publicly traded common stock between April 27, 2018 and October 24, 2018, inclusive (with certain exceptions) ("Settlement Class").  Lead Plaintiff alleges that, during the Settlement Class Period, Defendants knowingly or recklessly made materially false or misleading statements and omissions regarding Curo's transition away from Canadian "single-pay" to "open-end" loan products and the near-term negative impact that the transition would have on the Company's financial results and 2018 financial guidance.  *See* ECF No. 42, ¶¶93-137.  Lead Plaintiff also alleges that the price of Curo common stock was artificially inflated by Defendants' allegedly misleading statements and omissions, and that Lead Plaintiff and the Settlement Class suffered damages when Curo's true financial condition was revealed.  *Id.*, ¶¶196-202.  Defendants deny, and continue to deny, Lead

---

[2]    *See* Exhibit 3, Declaration of Robert J. Robbins Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Fee Decl.") and Exhibit 4, Declaration of Rachel E. Schwartz Filed on Behalf of Stueve Siegel Hanson LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Schwartz Fee Decl."), filed herewith.

Plaintiff's allegations of wrongdoing. The Robbins Declaration filed simultaneously herewith, and adopted by reference herein, fully describes the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and Lead Counsel during the course of the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement. *See* Robbins Decl., §§II, III, IV, VI.

As detailed more thoroughly in the accompanying Robbins Declaration, Lead Plaintiff filed a detailed complaint ("Complaint") and successfully opposed Defendants' attempt to dismiss the Litigation. *See* Robbins Decl., ¶¶21-28. Discovery was contentious and at no point did Defendants concede the merit of Lead Plaintiff's allegations. *Id.*, ¶¶34-37. In addition, the Settlement was achieved as a result of extensive, arm's length negotiations by Judge Hochberg, a neutral, third-party mediator. *Id.*, ¶¶9, 39-42, 47. The mediation session involved thorough briefing regarding the strengths and weaknesses of the Litigation, and discussions regarding the parties' respective claims and defenses. *Id.*, ¶¶9, 47. The parties were unable to reach a compromise at mediation, despite it lasting over 10 hours. *Id.*, ¶¶9, 42. Settlement was subsequently reached only after Judge Hochberg issued a double-blind "mediator's recommendation," which the parties accepted. *Id.*, ¶42.

Lead Plaintiff's and Lead Counsel's diligent prosecution of the Litigation has directly resulted in substantial, immediate relief. *See* Robbins Decl., ¶¶20-38, 47-51, 64-66, 78. Of particular note was their successful opposition to the entirety of Defendants' motion to dismiss, allowing the Settlement Class' claims to proceed to discovery. *See id.*, ¶¶26-28. This resulted in the obtaining and analyzing of over 215,000 pages of documents from Defendants and third parties. *See id.*, ¶37. Lead Plaintiff and Lead Counsel further served a fulsome motion and memorandum of law in support of class certification accompanied by an expert report. *See id.*, ¶38.

III.    **LEAD PLAINTIFF HAS PROVIDED SUFFICIENT NOTICE TO THE SETTLEMENT CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS**

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) also provides that notice of a class settlement must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (class notice designed to fulfill due process requirements). Notice "'must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015).

As explained in Lead Plaintiff's memorandum of law in support of preliminary approval (ECF No. 91, at §VI), the Court-approved Notice and Proof of Claim (the "Notice Packet") satisfies these standards and amply informs Settlement Class Members of all relevant case and Settlement-related information. For these reasons, the Court's Preliminary Approval Order found that the form and content of the notice program here, as well as the methods for notifying the Settlement Class proposed on preliminary approval, "constitute the best notice to Settlement Class Members practicable under the circumstances" and "satisfy all applicable requirements of the Federal Rules of Civil Procedure (including Rule 23(c)-(e)), the United States Constitution (including the Due Process Clause), Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the [PSLRA], the Rules of this Court, and other applicable law." Preliminary Approval Order, ¶10.

Here, the combination of: (i) individual First-Class Mail of more than 9,400 copies of the Notice Packet to all potential Class Members who could be identified with reasonable effort and

4844-6492-2833.v5

known record holders, supplemented by mailed notice to brokers and nominees (covering approximately 88% of estimated Settlement Class Members)[3]; and (ii) publication of the Summary Notice in a relevant, widely-circulated publication, transmission on a newswire and through a settlement website, is typical of notice plans approved in securities class action settlements, and likewise, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-KMH, slip op. at 2-3 (D. Kan. Apr. 10, 2015) (approving a substantially similar proposed notice and method for mailing, distributing, and publishing the notice) (attached as Ex. 6); *In re Molycorp, Inc. Sec. Litig.*, No. 1:12-CV-00292-RM-KMT, 2017 WL 4333999, at *2 (D. Colo. Mar. 6, 2017) (same); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 693 (D. Colo. 2014) (approving proposed method of notice, consisting of mailing notice to class members identified through reasonable efforts and through posting a summary notice by press releases issued over leading business oriented newspapers).

## IV.    FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

It is well established within this Circuit that the settlement of a complex class action, such as this, is both favored and encouraged. *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1227 (D.N.M. 2012) (approving class action settlement, noting that "'[i]t is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies'") (quoting *Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969)). Because of this, when exercising their sound discretion to approve a settlement, courts are mindful "'not to decide the merits of the case or resolve unsettled legal questions.'" *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *2 (D. Colo. Apr. 22, 2015).

---

[3]    Nordskog Decl., ¶7.

Fed. R. Civ. P. 23(e)(2), as recently amended, provides that a class action settlement may be approved by the court "only after a hearing and only on finding that it is fair, reasonable, and adequate," and identifies the following factors to be considered by courts at final approval: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Additionally, courts in the Tenth Circuit traditionally consider the following, which largely overlap with the Rule 23(e)(2) factors:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1101 (D. Kan. Dec. 7, 2018) (citing *Tennille*, 785 F.3d at 434).

The Court preliminarily determined that the proposed Settlement for $8.98 million meets these standards and is fair, reasonable, and adequate. ECF No. 96, ¶1. As discussed below, the Court's initial disposition was correct, as the Settlement easily satisfies each of the Rule 23(e)(2) and Tenth Circuit factors to support final approval.

## A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

To determine if the Settlement Class is adequately represented under Rule 23(e)(2), courts have utilized the standard for evaluating adequacy under Rule 23(a)(4) for class certification purposes: "whether (1) 'the named plaintiffs and their counsel have any conflicts of interest with other class members'; and (2) 'the named plaintiffs and their counsel [have] prosecute[d] the action vigorously on behalf of the class.'" *In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-ML-2792-D, 2020 WL 2616711, at *12 (W.D. Okla. May 22, 2020)

(citing *Rutter & Wilbanks Corp. v. Shell Oil, Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)). Lead Counsel and Lead Plaintiff readily meet this factor.

  ***First***, both Lead Counsel and Lead Plaintiff have no conflicts of interest with the Settlement Class. Lead Plaintiff's interests are fully aligned with the Settlement Class, and it has received no preferential treatment. *See, e.g.*, ECF Nos. 20-3, 20-4 (demonstrating Lead Plaintiff's Settlement Class Period purchases of Curo common stock, and resulting damages); ECF No. 81-1 at ¶8 (stating that Lead Plaintiff will not accept any payment for serving as Class Representative beyond its *pro rata* share of any recovery, except reasonable costs and expenses related to its representation of the Settlement Class as ordered or approved by the Court).

  ***Second***, as described in Section II, Lead Counsel and Lead Plaintiff have vigorously prosecuted this action on behalf of the Settlement Class. These vigorous efforts, among others, created a strong negotiating position and demonstrate Lead Plaintiff's and Lead Counsel's adequacy. *Id.*, ¶¶20-38, 47-51, 64-66, 78. *See Reiskin v. Reg'l Transp. Dist. Colorado*, No. 14-CV-03111-CMA-KLM, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) ("The case involved intensive discovery, including the review of thousands of pages of documents . . . . Numerous motions were filed and responded to, including well-briefed dispositive motions."); *Thornburg*, 912 F. Supp. 2d at 1237 ("[T]he Plaintiffs have vigorously prosecuted this action on behalf of the class, as the Plaintiffs successfully defended their claims through a motion to dismiss, and successfully reached a settlement with the Settling Defendants.").

  Throughout the Litigation, and as evidenced by the highly favorable Settlement, Lead Plaintiff and Lead Counsel have strenuously advocated for the best interests of the Settlement Class. Therefore, Lead Plaintiff and Lead Counsel respectfully submit that they have adequately represented the Settlement Class and satisfy Rule 23(e)(2)(A) for purposes of final approval.

4844-6492-2833.v5

### B. The Proposed Settlement Was Negotiated at Arm's Length and With an Experienced Mediator

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by the Tenth Circuit, which assesses whether "the settlement was fairly and honestly negotiated." *See Syngenta*, 357 F. Supp. 3d. at 1102. The Settlement was achieved as a result of extensive, arm's-length negotiations by Judge Hochberg, a neutral, third-party mediator. *Id.*, ¶¶9, 39-42, 47. The mediation session involved thorough, pre-mediation briefing regarding the strengths and weaknesses of the Litigation, and discussions regarding the parties' respective claims and defenses. *Id.*, ¶¶9, 47-51. The parties were unable to reach a compromise at mediation, despite it lasting over 10 hours. *Id.*, ¶¶9, 42. Settlement was subsequently reached only after Judge Hochberg issued a double-blind "mediator's recommendation," which the parties accepted. *Id.*, ¶42. This mediation process demonstrates that the Settlement was negotiated absent any collusion between the parties.[4]

Likewise, a strong presumption of fairness attaches to a class action settlement reached through arm's-length negotiations among able and well-versed counsel. *See Ogden v. Figgins*, No. 2:16-CV-02268-JAR, 2017 WL 5068906, at *3 (D. Kan. Nov. 3, 2017) ("'When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.'"); *Horton v. Molina Healthcare, Inc.*, No. 17-cv-0266-CVE-JFJ, 2019 WL 2207676, at *1 (N.D. Okla. May 22, 2019) (finding a proposed class action settlement fair and reasonable because, *inter alia*, it was "negotiated in good faith at arms' length between

---

[4]  *See Shapiro v. Alliance MMA, Inc.*, No. 17-2583 (RBK/AMD), 2018 WL 3158812, at *2 (D.N.J. June 28, 2018) (the parties' participation in a mediation before Judge Hochberg supported the finding that the settlement was negotiated at arm's length and without collusion between the parties); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *11 (D.N.J. Nov. 10, 2016) (same); *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *3 (D. Kan. June 18, 2020) (determining that a settlement "negotiated through a formal mediation" with an experienced mediator supported the conclusion that the settlement "is a product of an arm's length negotiation").

experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator").  Moreover, the fact that the Settlement was reached under the supervision and endorsement of Carpenters, a sophisticated institutional investor, further bolsters its reasonableness.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) ("Settlement negotiations were carried out under the direction of Lead Plaintiffs, sophisticated institutional investors whose involvement suggests procedural fairness."), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020).  As such, the Settlement was fairly and honestly negotiated and the requirements of Rule 23(e)(2)(B) are met.

### C.    The Costs, Risks, and Delay of Trial and Appeal

The third factor considered under Rule 23(e)(2) instructs courts to consider the adequacy of the settlement relief in light of "the costs, risks, and delay of trial and appeal."  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  This factor overlaps with the combined second and third factors considered by the Tenth Circuit – whether "serious legal and factual questions placed the litigation's outcome in doubt" and whether "the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation."  *Tennille*, 785 F.3d at 434; *see Chavez Rodriguez*, 2020 WL 3288059, at *3.  Taken together, these factors also weigh heavily in support of final approval of the Settlement.

### 1.    Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt

If the Litigation were to continue, serious questions of law and fact would place the outcome in significant doubt.  Courts within this Circuit and nationwide recognize that securities class actions are notoriously complex and present numerous hurdles at all stages of litigation.[5]  This case is no exception.

---

[5] *See, e.g.*, *Christine Asia Co. Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("'In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and

- 11 -

While Lead Plaintiff was able to successfully overcome Defendants' motion to dismiss, "that ruling provides no guarantee that [Lead Plaintiff] will ultimately prevail on the merits." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008); *see In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) ("Although plaintiffs survived defendants' motion to dismiss, they did so only under the very narrow standard of review which the court must apply to Rule 12(b)(6) motions."). In continued litigation, Lead Plaintiff would be confronted with the significant risks presented by class certification, expert discovery, summary judgment, trial, and appeal. *See id.* ("even if plaintiffs could have survived defendants' motions for summary judgment, additional serious questions of law and fact also would have placed in doubt the value of the recovery plaintiffs might have been able to obtain").

Defendants likely would have continued to strenuously argue that they face no liability. Specifically, Defendants maintained that they did not make any false statements, and that the statements at issue were truly held opinions, forward-looking statements protected by the PSLRA's safe harbor, statements of corporate optimism, and/or accurate statements of historical performance, and that Curo adequately warned investors about the uncertainty of its financial projections throughout the Settlement Class Period. *See* Robbins Decl., ¶¶4, 24-25. Defendants also claimed that Lead Plaintiff will be unable to prove that any Defendant acted with the requisite state of mind. *Id.*, ¶¶4, 24. Defendants will likely maintain, for example, that the Curo Defendants did not know and could not have predicted the impact the adoption of Canadian open-end loan products would have on Curo's ability to achieve its financial projections. *Id.*, ¶28.

---

notoriously uncertain.'"); *Crocs*, 306 F.R.D. at 691 (recognizing "a risk that plaintiffs would be unable to establish the required elements of their §10(b) claims" and that plaintiffs should "consider their likelihood of success certifying a relevant class, surviving summary judgment, and winning at trial"); *Thornburg*, 912 F. Supp. 2d at 1242 (recognizing difficulty associated with proving loss causation and establishing damages, and finding that the parties "disagree on many factual and legal issues, making the likelihood of prevailing at trial problematic").

- 12 -

Lead Plaintiff also faced the ongoing risks associated with class certification. At the time of Settlement, Lead Plaintiff had moved for class certification, but the time for Defendants to oppose Lead Plaintiff's motion had not yet passed. *Id.*, ¶38. Defendants were likely to argue that Lead Plaintiff could not prove "price impact" and that if the Settlement Class was to be certified at all, the length of the Settlement Class Period should be significantly shortened, from a start date of April 27, 2018 to a start date of July 31, 2018, at the earliest. *Id.*, ¶¶5, 54. These arguments would necessarily involve expert testimony. *Id.*, ¶¶58, 72. Even if Lead Plaintiff were to prevail in certifying the alleged broader class, Defendants could still have moved to decertify the class or trim the class period before trial, on appeal, or at any stage of the Litigation. *See Christine Asia*, 2019 WL 5257534, at *13 (finding that the risk of maintaining class status weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time).

Lead Plaintiff would face additional risk in establishing loss causation and damages. As to loss causation, Defendants would likely dispute that the alleged fraud caused the price of Curo common stock to drop. Defendants would also attack Lead Plaintiff's damages methodology as unreliable and claim that it does not accurately account for the effect that confounding or market effects had on the price of Curo common stock. Pointing to disclosed business risks, Defendants would assert that damages, if any, are zero or significantly less than Lead Plaintiff's estimates. Ultimately, these issues would come down to an unpredictable and hotly disputed "'battle of the experts,'" *see Thornburg*, 912 F. Supp. 2d at 1242, and Lead Plaintiff's claims would be susceptible to the risks involved in relying on expert witness testimony, including *Daubert* challenges. *See* Robbins Decl., ¶58. Lead Plaintiff's case would become much more difficult to prove if the Court were to determine that even one of Lead Plaintiff's experts should be excluded from testifying at trial. As a result, "[t]he suggestion that the Court should force an experienced, seasoned Plaintiffs'

- 13 -

class counsel to take the case to trial should not be made lightly, for victory is not assured or even likely except in the very best of cases." *Thornburg*, 912 F. Supp. 2d at 1242.

Therefore, considering the complex legal and factual issues associated with continued litigation, there is an undeniable and substantial risk that, after years of continued litigation and additional delays, the Settlement Class could have received an amount significantly less than the Settlement Amount, or nothing at all.

### 2. The Recovery Is Particularly Significant in Light of the Delay in Further Litigation

The $8,980,000 relief offered by the proposed Settlement is substantial, falling in a range of approximately 12.65% to 27.43% of the estimated recoverable damages. *See* Robbins Decl., ¶57. Specifically, it represents 12.65% of $71,000,000, which is Lead Plaintiff's best case, estimated damages. *Id*. However, had Defendants successfully shortened the Settlement Class Period to start at July 31, 2018, the Settlement would represent 27.43% of estimated recoverable damages of $32,740,781. *Id*. Either way, these percentages are multiples of the national 2.1% median percentage recovery to Investor Losses in securities class actions in 2019.[6] *Id*. Indeed, courts within this Circuit have found settlements representing less than 2% of estimated damages as appropriate for final approval. *See, e.g.*, *Crocs*, 306 F.R.D. at 691 n.20 (finding recovery of approximately 1.3% of amount of damages "is in line with the median ratio of settlement size to investor losses"). Further, there is something to be said about the additional value inherent in immediacy. *See* *Thornburg*, 912 F. Supp. 2d at 1244 ("'To most people, a dollar today is worth a great deal more

---

[6]    Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* (NERA Feb. 12, 2020) at 20, Fig. 13 available at https://www.nera.com/ content/dam/nera/publications/2020/PUB_Year_End_Trends_012120_Final.pdf (noting that median recovery in securities class actions in 2019 was approximately 2.1% of estimated Investor Losses). "Investor Losses" are a NERA-defined proxy to measure the aggregate loss to investors from the purchase of a defendant's stock. *Id*. at 18.

than a dollar ten years from now.'") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)).  This is particularly so where the size of any potential recovery would have been reduced by additional costs incurred by Lead Counsel in taking this case through trial and likely appeals.  *Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial").

Indeed, while this Litigation has been pending for almost two years, absent Settlement there would likely be many more years of litigation ahead.  The Settling Parties and the Court would expend significant time, resources, and costs to complete pre-trial proceedings, including fact and expert witness discovery, the District's Pretrial Order, summary judgment, and *Daubert* motions. *See Thornburg*, 912 F. Supp. 2d at 1206 ("any insurance proceeds which remain could be depleted by covering the defense costs necessary to go to trial, including discovery, depositions, and time in court").  ***Before*** the ongoing COVID-19 pandemic this case was scheduled for a trial to begin on May 3, 2022 (ECF No. 71).  Even assuming no delay on the trial date, Defendants could still appeal any verdict eventually obtained, which could take years to resolve and would unnecessarily expend judicial resources.  *See, e.g.*, *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 694 (D. Colo. 2006) ("If this case were to be litigated, in all probability it would be many years before it was resolved.").

Courts routinely recognize the value of an immediate recovery in the face of delays and uncertainty.  *See McNeely*, 2008 WL 4816510, at *13 ("[T]he class . . . is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."); *Crocs*, 306 F.R.D. at 691 ("[The] immediate recovery in this case outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery."); *In King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. Aug. 10, 1976) ("In this respect, 'it has been held proper "to take the bird in the hand instead of a prospective flock in the bush."'"); *accord Tennille v. W.*

- 15 -

*Union Co.*, No. 09-CV-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014), *appeal dismissed*, 809 F.3d 555 (10th Cir. 2015).

Considering the hurdles associated with continued litigation, the immediate, substantial relief offered by the $8,980,000 Settlement greatly outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future." *See Syngenta*, 2018 WL 1726345, at *2. Therefore, Lead Plaintiff respectfully submits that consideration of the costs, risks, and delay of trial and appeal strongly weighs in favor of the Settlement.

### D. The Proposed Method for Distributing Relief Is Effective

As demonstrated above and discussed in more detail in the accompanying Nordskog Declaration, the method and effectiveness of the notice and claims administration process are "effective" pursuant to Rule 23(e)(2)(C)(ii). As described in §III herein, Lead Plaintiff and Lead Counsel provided the best notice practicable under the circumstances in accordance with the Court's Preliminary Approval Order and the requirements of Rule 23, due process, and the PSLRA. As described in §V herein, the proposed Plan of Allocation was formulated after analysis from Lead Counsel's in-house damages consultant, utilizing a damages calculation from Lead Counsel's expert. The Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement to the Settlement Class in a cost-effective manner. The Notice and claims processes are similar to that commonly used in securities class action settlements and provide for straightforward cash payments based on the trading information provided. *See* §§III and V, *infra*; *see also* Robbins Decl., ¶¶43-46, 60-62. Thus, Lead Plaintiff respectfully submits that it has demonstrated a thorough and effective method of distributing relief, further supporting final approval.

### E. The Requested Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed below (§VII), Lead

Counsel seeks an award of attorneys' fees in the amount of 30% of the Settlement Amount, in addition to interest on such amount.

This request is in line with recent fee awards in this District. *See* §VII.B, *infra*. Further, this is an all-cash, non-reversionary settlement and the entire Net Settlement Fund will be distributed to Settlement Class Members until it is no longer economically feasible to do. As such, there is no risk that Plaintiffs' Counsel will be paid but Settlement Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).[7]

### F. The Settling Parties Have No Additional Agreement Other Than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As disclosed in moving for preliminary approval, the Settling Parties have entered into a standard supplemental agreement providing that, in the event Settlement Class Members with Settlement Class Period purchases of Curo common stock that exceed a certain percentage of all Curo shares purchased during the Settlement Class Period validly request exclusion from the Settlement Class, Curo shall have the option to terminate the Settlement. *See* ECF No. 91 at 28-29; Stipulation, ¶7.3. These types of agreements are "standard in securities class action settlements and [therefore] ha[ve] no negative impact on the fairness" of the Settlement. *See Christine Asia*, 2019 WL 5257534, at *15. The Parties are willing to submit this agreement to the Court under seal at the Court's request.

---

[7]    The Stipulation provides that any attorneys' fee award shall be paid to Lead Counsel upon the Court's execution of the Judgment and Order awarding such fees. Stipulation, ¶6.2.

### G.    Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) considers whether Settlement Class Members are treated equitably. As discussed further below in §V, all Settlement Class Members are treated equitably under the terms of the Stipulation, including the Plan of Allocation set forth in the Notice. The Plan of Allocation provides that each Settlement Class Member that properly submits a valid Proof of Claim and Release form will receive his, her or its *pro rata* share of the Net Settlement Fund. *See* §V, *infra*. Indeed, Lead Plaintiff will be subject to the same formula for distribution of the Net Settlement Fund as every other Settlement Class Member. This factor therefore supports granting final approval of the Settlement.

### H.    The Judgment of the Settling Parties

The final, additional factor courts in the Tenth Circuit consider is whether the parties view the settlement as fair and reasonable. *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1246 (D. Kan. 2015). Lead Plaintiff and Lead Counsel both strongly endorse the Settlement as fair and reasonable, and believe it is in the best interests of the Settlement Class. *See* Exhibit 5, Declaration of R. Nathan German on Behalf of Lead Plaintiff Carpenters ("German Decl."), ¶¶6, 9; Robbins Decl., ¶51. Lead Counsel has extensive experience litigating securities class actions (Robbins Fee Decl., Ex. F (RGRD firm resume)) and considered the risks and delays of continued litigation and the range of possible recovery. Robbins Decl., ¶¶47-59. As a result, this factor weighs heavily in favor of final approval. *See O'Dowd v. Anthem, Inc*., No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019) (recognizing that "'the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight'"); *Hapka v. CareCentrix, Inc.*, No. 2:16-CV-02372-KGG, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018) ("'Counsels' judgment as to the fairness of the agreement is entitled to considerable weight.'").

- 18 -

Additionally, the reaction of the Settlement Class to date has been overwhelmingly positive. While 9,434 Notice Packets have been mailed, and the Summary Notice has been published, no objections or opt outs have been received.  Nordskog Decl., ¶¶8, 12-13.  This positive reaction further evidences the merit of the Settlement.  *See Syngenta*, 357 F. Supp. 3d at 1103 ("The fact that the class members have reacted so overwhelmingly in favor of the settlement further supports a finding that the settlement is fair and reasonable and adequate.").

## V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The proposed Plan of Allocation, set forth in the Notice, details how the Net Settlement Fund is to be allocated among Authorized Claimants.  The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, reasonable, and adequate." *See Lucas*, 234 F.R.D. at 695.  In making this determination, courts give great weight to the recommendation of experienced counsel.  *See id*.  ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.").

Here, the Plan of Allocation was formulated after analysis from Lead Counsel's in-house damages consultant, utilizing damages calculations from Lead Counsel's damages expert.  It is based on the out-of-pocket measure of damages and is consistent with Lead Plaintiff's allegations.  Further, the Plan of Allocation will distribute the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that the Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants.  *See* Robbins Decl., ¶¶60-62.  Calculation of a Recognized Claim will depend upon several factors, including when the securities were purchased, acquired, sold, or held. *Id*.

Lead Counsel submits that this method of distributing settlement funds is fair, reasonable, and adequate, and warrants this Court's approval. *See id.*, ¶62; *see also*, *e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *2 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (approving similar plan of allocation); *Crocs*, 306 F.R.D. at 692 (approving plan of allocation in securities class action settlement where funds will be allocated "pro rata" based on similar factors and plaintiffs "consulted with damages experts"). Notably, there have been no objections to the Plan of Allocation to date, which further supports its merit at final approval. *See id.* at 691 ("The reaction of the class members further supports the conclusion that the Settlement Agreement is fair.").

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS APPROPRIATE

Under the terms of the Stipulation, the Settling Parties agreed, for the purposes of the Settlement only, to the certification of the Settlement Class, "[a]ll persons or entities who purchased or otherwise acquired the publicly traded common stock of Curo between April 27, 2018 and October 24, 2018, inclusive, and were allegedly damaged thereby."[8] In its Preliminary Approval Order, the Court granted Lead Plaintiff's request and preliminarily certified the Settlement Class. Preliminary Approval Order, ¶2.

Since this decision, nothing has changed to disturb the Court's initial conclusion that class treatment for settlement purposes is appropriate. As such, there is no reason why the Court's decision should change at final approval.

---

[8]    The following are excluded from the Settlement Class: Curo, the Individual Defendants, the Founder Defendants, and the FFL Defendants; the officers and directors of Curo and the FFL Defendants during the Settlement Class Period; members of the immediate family of any excluded person; the legal representatives, heirs, successors, or assigns of any excluded person or entity; and any entity in which a Defendant has or had a controlling interest during the Settlement Class Period. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice. Preliminary Approval Order, ¶¶2, 3; Stipulation, ¶1.4.

## VII.    THE REQUESTED ATTORNEYS' FEES AND EXPENSE AWARD SHOULD BE APPROVED

### A.    Lead Counsel Is Entitled to a Reasonable Percentage of the Common Fund

Fee awards in meritorious cases promote private enforcement of, and compliance with, the federal securities laws, which "seek to maintain public confidence in the marketplace.  They do so by deterring fraud, in part, through the availability of private securities fraud actions."  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007).  For over fifty years, the Supreme Court has repeatedly emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class").  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered on the theory "'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'"  *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (awarding fees based on percentage of settlement fund) (quoting *Boeing*, 444 U.S. at 478).

In 1995, Congress passed the PSLRA and codified the percentage-of-recovery approach for awarding fees in common fund securities fraud cases.  15 U.S.C. §78u-4(a)(6).  Under the PSLRA, "Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions."  *In re Telik, Inc. Sec. Litig*., 576 F. Supp.

- 21 -

2d 570, 586 (S.D.N.Y. 2008); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). Indeed, by its plain terms, the PSLRA sets the "award of attorneys' fees and expenses to 'a reasonable percentage' of any recovery." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006).

The Tenth Circuit has generally adhered to the percentage of the fund method for awarding attorneys' fees in common-fund cases such as this.[9] In *Gottlieb*, for instance, the Tenth Circuit explained that a percentage method for setting a fee "is less subjective than the lodestar plus multiplier approach," matches the marketplace most closely thus providing better incentive to counsel, and is better suited where class counsel "was initially retained on a contingent fee basis." 43 F.3d at 484; *see also Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (accepting the propriety of the percentage approach "rather than lodestar" in the awarding of attorneys' fees).

"There are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method of determining attorney fees in these cases." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005); *see also Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (3d Cir. 1985). **First**, "[the percentage] methodology rewards efficiency and provides plaintiffs' counsel with a strong

---

[9]    *See, e.g., Gottlieb*, 43 F.3d at 482 ("the more recent trend has been toward utilizing the percentage method in common fund cases"); *Sprint*, 443 F. Supp. 2d at 1269 (noting that percentage of fund analysis is preferred method for awarding fees in common fund cases); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140, at *4 (D. Colo. Mar. 9, 2000) ("[w]hile enhanced lodestar cases remain instructive, the Tenth Circuit has expressed 'a preference for the percentage of the fund method'"); *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 U.S. Dist. LEXIS 100681, at *13 (D. Colo. Oct. 20, 2009) (applying percentage method); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-CV-0944-CVE-FHM, 2006 U.S. Dist. LEXIS 87681, at *2-*3 (N.D. Okla. Dec. 4, 2006) (same); *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *21 (N.D. Okla. May 28, 2003) (same); *Ramah Navajo Chapter v. Norton*, 250 F. Supp. 2d 1303, 1316 (D.N.M. 2002) (same).

incentive to effectuate the maximum possible recovery under the circumstances." *In re St. Paul Travelers Sec. Litig.*, No. 04-3801 (JRT/FLN), 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006); *see also In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*, 149 P.3d 976, 993 (N.M. Ct. App. 2006) ("The percentage method is preferred in some jurisdictions, including the Tenth Circuit, because this method rewards efficient and prompt resolutions of class actions . . . .").[10] ***Second***, the percentage method is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated on a percentage-of-the-recovery method. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). ***Third***, use of the percentage method decreases the burden imposed upon courts by the "lodestar" method, and assures that class members do not experience undue delay in receiving their share of the settlement. *See Telik*, 576 F. Supp. 2d at 585 ("the 'primary source of dissatisfaction' with the lodestar methodology 'was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits'").

### B.    Lead Counsel Seeks 30% of the Fund, a Percentage Consistent with What Courts in This Circuit Have Found to Be Reasonable

As the Supreme Court has recognized, an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the open marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). In complex cases, such as this one: "Regardless of whether a percentage of the fund or enhanced lodestar approach is used, class action fee awards are ***typically 30%*** of the fund created by the settlement." *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *4-*5 (awarding 30% of settlement fund).

---

[10]    *See also Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015) ("The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis . . . .") (awarding one third of common fund).

Lead Counsel's request for attorneys' fees of 30% is consistent with fee percentages awarded by courts in this District and in the Tenth Circuit in common fund cases. *See, e.g.*, *Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029-DDC-GEB, 2019 WL 2185081, at *1 (D. Kan. May 21, 2019) (awarding attorneys' fees of 33% of the gross settlement fund); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d at 1110-14 (awarding attorneys' fees of one-third and stating the "Court finds that a one-third fee is customary in contingent-fee cases");[11] *see also Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at *44 (D.N.M. Feb. 27, 2013) (awarding 30%, which was "within the range of awards that other courts within the Tenth Circuit have approved"); *Fankhouser v. XTO Energy, Inc*., No. CIV-07-798-L, 2012 WL 4867715, at *3 (W.D. Okla. Oct. 12, 2012) (awarding "nearly 36 percent" of settlement fund); *Chavez Rodriguez*, WL 3288059, at *4 (awarding attorneys' fees of 33% of the settlement amount after costs). Notably, Lead Counsel's fee request is also in line with other recent settlements involving similar securities fraud allegations. *See, e.g.*, *In re Prothena Corp. PLC Sec. Litig.*, No. 1:18-cv-06425-ALC, 2019 WL 6528672, at *1 (S.D.N.Y. Dec. 4, 2019) (awarding 30% of $15,750,000 recovery); *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *1 (D. Colo. Sept. 18, 2014) (awarding 30% of the settlement fund, plus expenses); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-md-02063-JLK-KMT, 2014 WL 12768451, at *2 (D. Colo. July 31, 2014) (finding attorneys' fee award of 30% of the settlement fund consistent with similar securities fraud cases).[12] Based on the fees

---

[11] *See also Bailes v. Lineage Logistics, LLC*, No. 15-2457-DDC-TJJ, 2017 WL 4758927, at *3 (D. Kan. Oct. 20, 2017) (approving attorneys' fees of 33% of the total settlement payment); *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (finding a fee of one-third of the total amount of the settlement fund to be "a reasonable and appropriate fee"); *Barnwell v. Corr. Corp. of Am.*, No. 2:08-cv-02151-JWL-DJW, slip op. at 2 (D. Kan. Feb. 12, 2009) (approving award of 33% of gross settlement amount) (attached as Ex. 7).

[12] *See also In re Rhythms Sec. Litig*., No. 1:02-cv-00035 (JLK)(CBS), slip op. at 7 (D. Colo. Apr. 3, 2009) (fee award of 30% of the settlement fund) (attached as Ex. 8); *McNeely*, 2008 WL 4816510, at

- 24 -

awarded in other complex class action cases, Lead Counsel's 30% fee request is both fair and reasonable.

### C.   The "*Johnson* Factors" Support the Reasonableness of Lead Counsel's Fee Request

Courts in this jurisdiction consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) for added guidance on setting reasonable fees. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (noting that "federal courts have relied heavily on the factors articulated . . . in [*Johnson*] in calculating and reviewing attorneys' fees awards"). The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The weight to be given to each of the *Johnson* factors varies from case to case, and each factor is not always applicable. The factors applicable to this Litigation are addressed below.[13]

---

*15 (awarding 33% and noting that "[f]ees in the range of at least one-third of the common fund are frequently awarded in class action cases of this general variety"); *Lewis*, 2006 U.S. Dist. LEXIS 87681, at *4-*5 (fee award of 33% of the settlement fund); *In re Boston Chicken, Inc. Sec. Litig.*, No. 97-cv-1308-WDM-PAC, 2006 U.S. Dist. LEXIS 56267, at *5-*6 (D. Colo. Aug. 10, 2006) (fee award of 32% of the settlement fund); *In re Novell, Inc. Sec. Litig.*, No. 2:99-cv-00995-TC, slip op. at 1 (D. Utah May 26, 2005) (fee award of 30% of the settlement fund) (attached as Ex. 9); *In re Pre-Paid Sec., Inc. Litig.*, No. 5:01-cv-00182-C, slip op. at 9 (W.D. Okla. Dec. 10, 2004) (fee award of 30% of the settlement fund) (attached as Ex. 10); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, No. 89 Civ. 822, 1993 U.S. Dist. LEXIS 19969, at *4-*5 (W.D. Okla. June 8, 1993) ("[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis").

[13]   The following factors do not pertain to this Litigation: time limitations imposed by the client or the circumstances, and the nature and length of the professional relationship with the client. Thus,

- 25 -

When evaluated under the *Johnson* factors, Lead Counsel's fee request is reasonable.

### 1.    The Amount Involved and the Results Obtained

"While other criteria in determining reasonable attorney fees are legitimate considerations, the amount of the recovery, and end result achieved, is of primary importance." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 605 (D. Colo. 1974). In addition, this factor "'may be given greater weight [in a common fund case when the court] determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class.'" *Millsap*, 2003 U.S. Dist. LEXIS 26223, at *29 (quoting *Brown*, 838 F.2d at 456). Through its extensive efforts during the prosecution and settlement of this Litigation, Lead Counsel has obtained a substantial recovery of $8,980,000.

The Settlement represents a significant recovery for Settlement Class Members. With the assistance of Lead Plaintiff's damages expert, Lead Counsel estimates that the Settlement Class' maximum recoverable damages, if successful on all claims at trial, were approximately $71 million. The Settlement represents approximately 12% of this maximum estimated amount and approximately 27% of damages had Defendants successfully reduced the length of the Settlement Class Period. Robbins Decl., ¶57. And it does so while avoiding the substantial risks Lead Plaintiff faced in establishing the Settlement Class' damages at trial. *Id.*, ¶58. Indeed, the recovery here is more than five times larger than the median recovery in similarly-sized cases.[14] That Lead Counsel has secured such a result in the face of the significant risks discussed above (§IV.C) demonstrates that the requested fee of 30% is reasonable and fair.

---

Lead Counsel will not analyze these factors. *See Uselton*, 9 F.3d at 854 (recognizing that "'rarely are all of the *Johnson* factors applicable'").

[14]  *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full Year Review*, NERA Economic Consulting, fig. 13 at 20 (Feb. 12, 2020).

2.    **The Customary Fee – the Percentage Requested Is Consistent with Those Typically Awarded in This Circuit**

As discussed above, Lead Counsel's request for 30% of the fund is consistent with percentages approved as fair and reasonable by other courts in this Circuit in other complex class actions. *See* §VII.B, *supra*.

3.    **Time and Labor Required**

a.    **The Amount of Time and Labor Dedicated by Lead Counsel Justifies the Requested Fee**

The amount of time and labor Lead Counsel dedicated to the prosecution and settlement of the Litigation also demonstrates the reasonableness of the 30% fee request.  As detailed in the Robbins Declaration, Lead Counsel vigorously prosecuted this Litigation against Defendants.  This case was settled only after Lead Counsel: (i)  conducted an extensive investigation, including investigative interviews of relevant third-party witnesses; (ii) filed a comprehensive amended complaint; (iii) successfully opposed Defendants' motion to dismiss in its entirety; (iv) identified, retained and consulted with a market efficiency, causation and damages expert; (v) conducted targeted discovery to Defendants and multiple third parties, including numerous contentious meet and confer conferences regarding the proper scope of discovery, and reviewing and analyzing documents produced by Defendants and third parties; (vi) responded to discovery propounded by Defendants; (vii) filed a motion for class certification supported by an expert report; and (vii) engaged in vigorous and protracted settlement negotiations with Defendants' counsel, with the continued assistance of an experienced mediator.[15]  Robbins Decl., ¶¶21-42.  These efforts paved the

---

[15]    Lead Counsel has and will continue to perform legal work on behalf of the Settlement Class should the Court approve the proposed Settlement and Plan of Allocation.  Additional resources will be expended assisting Settlement Class Members with their Proof of Claim and Release forms and related inquiries and working with the Claims Administrator, A.B. Data, to ensure the smooth progression of claims processing.

way for Lead Counsel to obtain a substantial financial recovery for the Settlement Class, and Lead Counsel should now be appropriately compensated for its efforts.

> **b.    A Lodestar Cross-Check Also Supports Lead Counsel's Fee Request**

The requested fee not only represents a reasonable percentage of the benefit obtained, but also reasonably reflects the work invested by Lead Counsel.  As demonstrated by Plaintiff's Counsel's fee declarations, after the review of all billing entries and the exercise of billing judgment, over 4,000 hours, resulting in an aggregate lodestar of $2,749,398, have been invested in this Litigation.  Robbins Fee Decl., ¶5; Schwartz Fee Decl., ¶12.[16]  As a result, Lead Counsel's request for an award of 30% of the Settlement Amount ($2,694,000) – a 0.98 lodestar multiplier – is a discount on the time actually spent litigating the matter.

While courts in this Circuit regularly approve positive multipliers,[17] courts have repeatedly recognized that the reasonableness of a fee request under the percentage method is reinforced where the requested percentage fee would represent a negative multiplier of the lodestar, as is the case here. *See Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-GEB, slip op. at 2-3 (D. Kan. Aug. 12, 2015) (fee award resulted in significant negative multiplier) (attached as Ex. 11); *Cox v. Spring Coms. Co. L.P.*, No. 6:10-cv-01262-KGG, 2012 WL 5512381, at *3 (D. Kan. Nov. 14, 2012) (finding that the Kansas-only portion of a cumulative $41,500,000 attorneys' fee request was reasonable, in part

---

[16]   This lodestar was calculated using Plaintiff's Counsel's usual hourly rates, which are consistent with and often lower than rates that have been approved in this District.  *See* Schwartz Fee Decl., ¶13.

[17]   *See, e.g.*, *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *7-*8 (noting that "[c]ourts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed"); *In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming application of a 2.57 multiplier); *Brewer v. S. Union Co.*, 607 F. Supp. 1511, 1535 (D. Colo. 1984) (applying a multiplier of 3); *In re Crocs., Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396, at *12-*13 (D. Colo. Sept. 18, 2014) (holding that the 1.23 multiplier was "well below" other approved multipliers that range from 2.5 to 4.6).

because it was "subject to a ***negative*** multiplier") (emphasis in original); *Barr v. Qwest Coms. Co., LLC*, No. 1:01-cv-00748-WYD-KLM, 2013 WL 141565, at *5 (D. Colo. Jan. 11, 2013) ("the fee-and-expense award is far from excessive" as it represents a negative multiplier); *Thornburg*, 912 F. Supp. 2d at 1259 ("The attorneys' fees represent a negative multiplier of the total lodestar amount and are an acceptable percentage of the Class' award.").

Accordingly, the reasonableness of Lead Counsel's 30% fee request is confirmed by a lodestar cross-check analysis.

### 4. The Novelty and Difficulty of the Legal and Factual Questions Support Lead Counsel's Fee Request

An analysis of the novelty and difficulty of the issues involved in the Litigation also favors granting Lead Counsel's request for attorneys' fees. "Securities fraud class actions are by their nature, complex and difficult to prove." *In re Charter Commc'ns, Inc.*, No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772, at *47-*48 (E.D. Mo. June 30, 2005). In this Litigation, not only was Lead Plaintiff faced with the inherent complexities involved in this type of action, but there were also additional complexities presented here, including multiple discovery disputes, nuanced control person claims, attacks on the length of the class period that would have significantly reduced damages (*see* Robbins Decl., ¶¶22, 25-26, 34-36), and many of the underlying facts and events occurred in a foreign country, adding further complexity to the litigation. *Id.*, ¶17; *see King Res.*, 420 F. Supp. at 632 (finding novelty and difficulty of issues supported requested fees where "[t]he litigation . . . involved unique and substantial issues of law in the technical area of SEC Rule 10b-5 . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages").

### a. Risk in Establishing Liability

As discussed above (§IV.C), Lead Plaintiff faced substantial risks in moving forward with the Litigation. For instance, Defendants strenuously argued that Lead Plaintiff's allegations amounted to "fraud by hindsight," that Defendants had no duty to disclose the allegedly omitted information, and that Defendants' statements were not false and involved only opinions for which they could not be liable. Robbins Decl., ¶¶24-25. While Lead Plaintiff disagreed with Defendants' contentions, there was a substantial risk of recovering limited or no damages if the Court or jury agreed with any of Defendants' arguments. *Id.*, ¶¶55-56. Defendants also vigorously disputed scienter, and Baker and the Founder and FFL Defendants directly challenged their status as "control persons" subject to liability under Section 20(a). *Id.*, ¶¶24-25. Again, Lead Plaintiff disagreed, but recognized that Defendants would be able to present testimony from numerous fact and/or expert witnesses that could call into question Defendants' liability.

### b. Risk in Establishing Causation and Damages

Even if Lead Plaintiff ultimately succeeded in overcoming each and every defense Defendants could raise regarding liability, Lead Plaintiff also faced risks in establishing causation and damages. Lead Plaintiff would be required to prove that Defendants' alleged false statements and omissions of material fact inflated the price of Curo common stock during the Settlement Class Period, and that, upon the disclosures of such misinformation, the price of Curo shares dropped, damaging Lead Plaintiff and the Settlement Class. *See Dura*, 544 U.S. at 341-42. Lead Plaintiff also would be required to prove the amount of the artificial inflation that came out of the securities following the October 24, 2018 announcement of disappointing third quarter 2018 financial results and a significant cut in full year 2018 guidance.

Although Lead Counsel worked extensively with a causation and damages expert and believed it would be able to present expert testimony to meet Lead Plaintiff's burden on loss

4844-6492-2833.v5

causation and establish damages with respect to the alleged corrective disclosure, Defendants undoubtedly would advocate for a substantially smaller damages figure, or zero. The jury would have been presented with expert testimony on the portions of Curo's securities price decline related to the disclosure of the alleged fraud and tasked with determining what amount, if any, of the price decline was fraud-related. As a result, the crucial element of damages would almost certainly have been reduced at trial to a "battle of the experts." Robbins Decl., ¶58; *see, e.g.*, *In re EVCI Career Coll. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *8 (S.D.N.Y. July 27, 2007) (noting unpredictability of battle of damage experts); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe"). Accounting for the foregoing risks, the Settlement Class would by no means be assured of a ruling in its favor. The novelty and difficulty of these legal and factual questions further support the Settlement achieved and the requested attorneys' fees.

### 5. The Skill Required and the Experience, Reputation, and Ability of Lead Counsel Support the Requested Fee

The skill required and the experience, reputation, and ability of the attorneys also support the requested fee award. *See Johnson*, 488 F.2d at 717-19. Lead Counsel is among the nation's preeminent law firms in class action securities litigation and have successfully litigated and tried numerous class actions on behalf of major institutional investors. *See* Robbins Fee Decl., Ex. F. Local Counsel Stueve Siegel is a similarly skilled complex litigation firm that, consistent with Local Rule 5.4.2(c)(3), meaningfully participated in the successful prosecution of this matter. Schwartz Fee Decl., ¶¶2-4, 9-10, 17 & Exs. A, E.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749

(S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Defendants are represented by experienced and skilled defense counsel, Willke Farr & Gallagher LLP, as well as the Kansas City firm Berkowitz Oliver LLP, which spared no effort in the defense of their clients' claims. In the face of this formidable opposition, Lead Counsel developed its case so as to persuade Defendants to agree to a substantial $8,980,000 financial recovery for the Settlement Class. The skill, experience, reputation, and ability of both Plaintiffs' and Defendants' counsel further support the requested fee award.

### 6. The Contingent Nature of the Fee Weighs in Favor of the Requested Award

Courts in this Circuit have found that "the risk of non-recovery" weighs heavily in considering an award of attorneys' fees. *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *9-*10; *see also Shaw*, 2015 WL 1867861, at *7 (contingent fee "'is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful'"). Lead Counsel has prosecuted this Litigation on a wholly contingent basis and has borne all the risks, including surviving dispositive motions, obtaining class certification, proving liability, causation and damages, prevailing in the "battle of the experts," and litigating the case through trial and possible appeals. Lead Counsel understood from the outset that it was embarking on a complex, expensive, and lengthy litigation, which would require a significant investment of attorney time and expenses, with no guarantee of ever being compensated for the investment of such time and money. Lead Counsel also understood that Defendants would (and, in fact, did) retain large and highly experienced corporate defense firms to mount a strong defense. In undertaking this risk, Lead Counsel was obligated to, and did, ensure that sufficient resources were dedicated to the prosecution of this Litigation. *See generally* Robbins Decl., ¶¶63-66, 75.

The risks of contingent litigation are highlighted by the fact that a dramatic change in the law can result in the dismissal of a claim after a great deal of time and effort has been expended on the case. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 842 F. Supp. 2d 522 (S.D.N.Y. 2012) (granting judgment on the pleadings following change of law in *Morrison v. Nat'l Austl. Bank Ltd*., 561 U.S. 247 (2010)); *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (affirming grant of summary judgment for energy company in PSLRA case based on Supreme Court decision in *Dura*). Thus, there existed a real risk that Lead Counsel (and the Settlement Class) would invest substantial resources and efforts and receive nothing. *See Eatinger v. BP America Prod. Co.*, No. 6:07-cv-01266-EFM-KMH, slip op. at 14 (D. Kan. Sept. 17, 2012) ("Finally, the contingent nature of the case meant that at the end of the day, Class Counsel could have been left with no fee and no recovery of the enormous expenses that it had paid and carried for years.") (attached as Ex. 12). As such, this factor further supports the requested fee award.

### 7. The Preclusion of Other Employment by Plaintiff's Counsel Supports the Requested Fee

As demonstrated by the 4,056 hours incurred in prosecuting this action, Plaintiff's Counsel were precluded from other employment – including hourly or other contingent fee litigation – due to their acceptance of this Litigation. Robbins Decl., ¶73. Accordingly, this factor weighs in favor of approving the fee request. *See Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK-CBS, 2006 U.S. Dist. LEXIS 51420, at *18 (D. Colo. July 27, 2006) ("Large-scale class actions . . . necessarily require a great deal of work, and a concomitant inability to take on other cases.").

### 8. The Undesirability of the Case Supports the Requested Attorneys' Fees and Expenses

Securities class action cases have often been recognized as "undesirable" due to the financial burden on counsel, and the time demands required to litigate cases of such size and complexity. *See, e.g.*, *Eatinger*, No. 6:07-cv-01266-EFM-KMH, slip op. at 13 ("The time, effort, and out-of-pocket

investment makes a class action undesirable to most attorneys.") (attached as Ex. 12); *Millsap*, 2003 U.S. Dist. LEXIS 26223, at *41 ("This case is . . . undesirable, in the way that all contingent fee cases are undesirable, because it produced no income, but has required significant expenditures . . . ."). Like the rest of the relevant *Johnson* factors, this factor too supports the approval of Lead Plaintiff's requested fees.

**D.    The Reaction to the Requested Fee by the Settlement Class Further Supports Its Reasonableness**

Although not specifically cited as a factor for consideration by the Tenth Circuit, courts also recognize the significance of the class members' reaction to the request for attorneys' fees and expenses. *See generally Sprint*, 443 F. Supp. 2d at 1262. Lead Plaintiff fully supports the Settlement and Lead Counsel's request for its fees and expenses. German Decl., ¶¶6-7. Here, notice of the proposed Settlement was mailed to over 9,400 potential Settlement Class Members and nominees, advising them that Lead Counsel would be requesting an award of attorneys' fees not to exceed 30% of the Settlement Amount and litigation expenses not to exceed $300,000 plus interest on both amounts at the same rate as earned by the Settlement Fund, all to be paid from the Settlement Fund. Nordskog Decl., ¶8. As of the filing of this memorandum, not one Settlement Class Member has objected to these requests, further bolstering the reasonableness of fee request. *Id.*, ¶¶12-13.

**E.    Plaintiff's Counsel Are Entitled to an Award of Their Reasonable Litigation Expenses**

"As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *11. Here, Lead Counsel requests an award of litigation expenses and charges in the amount of $123,584.38 incurred by Plaintiff's Counsel to date in connection with the prosecution of the Litigation on behalf of the Settlement Class, plus interest on such amount at the same rate as earned by the Settlement Fund. A large portion of these expenses was used to pay for

- 34 -

the investigation, document duplication, on-line research, Lead Plaintiff's market efficiency and damages experts, and mediation fees. These expenses were directly related to the prosecution of this Litigation. *See* Robbins Fee Decl., Ex. B; Schwartz Fee Decl., Ex. B. To date, no objections have been received regarding this expense request. Accordingly, Lead Counsel respectfully requests an award of $125,584.38 for these expenses.

## VIII.   THE REQUESTED PSLRA AWARD FOR LEAD PLAINTIFF SHOULD BE APPROVED

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).[18] Here, as set forth in the German Declaration (¶¶8, 9), Carpenters is seeking $2,500 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Settlement Class.

Lead Plaintiff has been fully committed to pursuing its claims against Defendants since before moving for appointment as Lead Plaintiff. Lead Plaintiff has actively and effectively fulfilled its obligations as representative for the Settlement Class, complying with all of the many demands placed upon it during the prosecution and settlement of the Litigation, and providing invaluable assistance to Lead Counsel. Among other things, Lead Plaintiff reviewed and approved the filing of significant pleadings and briefs, engaged in conferences and correspondence with Lead Counsel regarding the Litigation, participated in discovery by searching for and collecting responsive documents, and consulted with Lead Counsel regarding mediation and settlement strategy. *See* German Decl., ¶¶4, 8.

---

[18]   In enacting the PSLRA, Congress intended to grant courts discretion in this regard. *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734 (lead plaintiffs should be compensated for activities "associated with service as lead plaintiff . . . and [the committee] grants the courts discretion to award fees accordingly").

These are precisely the types of activities courts have found to support awards to class representatives. *See Sprint*, No. 2:09-cv-02122-EFM-KMH, slip op. at 2-3 (granting awards to lead plaintiffs where they reviewed pleadings, communicated with counsel and kept informed of settlement negotiations) (attached as Ex. 11); *Xcel*, 364 F. Supp. 2d at 1000 (same); *see also In re Am. Int'l Grp., Inc.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"), *aff'd*, 452 F. App'x 75 (2d Cir. 2012); *In re Marsh & McLennan Cos. Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs for their time spent supervising lead counsel's work).

Lead Counsel respectfully submits that Lead Plaintiff's participation in the Litigation fully warrants the Court's approval of an award to Lead Plaintiff in the amount of $2,500.

## IX.    CONCLUSION

For the reasons set forth above and in the accompanying declarations, Lead Plaintiff respectfully requests that this Court enter the proposed Final Judgment and Order of Dismissal with Prejudice, approving the Settlement. Lead Plaintiff also requests that the Court enter an order approving the Plan of Allocation, which will govern distribution of the Net Settlement Fund. Finally, Lead Counsel respectfully requests that the Court enter an order awarding attorneys' fees of 30% of the Settlement Amount, expenses of $123,584.38 and an award to Lead Plaintiff of $2,500 pursuant to 15 U.S.C. §78u-4(a)(4).

DATED: November 13, 2020                Respectfully submitted,

                                            STUEVE SIEGEL HANSON LLP
                                            NORMAN E. SIEGEL, D. Kan. #70354
                                            RACHEL E. SCHWARTZ, KS #21782

                                                    *s/ Rachel E. Schwartz*
                                                   RACHEL E. SCHWARTZ

460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: 816/714-7100
816/714-7101 (fax)
siegel@stuevesiegel.com
schwartz@stuevesiegel.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE (admitted *pro hac vice*)
ROBERT J. ROBBINS (admitted *pro hac vice*)
KATHLEEN B. DOUGLAS (admitted *pro hac vice*)
MAUREEN E. MUELLER (admitted *pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
rrobbins@rgrdlaw.com
kdouglas@rgrdlaw.com
mmueller@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

CAVANAGH & O'HARA
JOHN T. LONG (admitted *pro hac vice*)
2319 West Jefferson Street
Springfield, IL 62702
Telephone: 217/544-1771
217/544-9894 (fax)
johnlong@cavanagh-ohara.com

Additional Counsel for Lead Plaintiff

- 37 -

4844-6492-2833.v5